964 F.2d 159
 60 USLW 2737
 CHASE MANHATTAN BANK, N.A., Plaintiff-Appellee,
v.
TURNER & NEWALL, PLC, formerly known as Turner & Newall
Ltd., Defendant-Third-Party-Plaintiff-Appellant,
Skidmore, Owings & Merrill, Turner Construction Company,
Third-Party-Defendants.
 No. 1034, Docket 91-9177.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 26, 1992.
Decided May 18, 1992.
 
 Thomas I. Sheridan, III, New York City (Charles E. Dorkey, III, Haythe & Curley, Sara Q. Cobb, New York City, of counsel), for defendant-third-party-plaintiff-appellant.
 Robert R. Elliott, III, New York City (Kent T. Stauffer, Janis G. White, New York City, of counsel), for plaintiff-appellee.
 Irene C. Warshauer, New York City (Mary Beth Gorrie, Anderson Kill Olick & Oshinsky, P.C., New York City, of counsel), for amicus curiae Keene Corporation in support of defendant-third-party-plaintiff-appellant.
 Before: TIMBERS, NEWMAN and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Turner & Newall, PLC ("T & N") appeals from Judge Broderick's interlocutory discovery order permitting counsel for Chase Manhattan Bank, N.A. ("Chase") to examine thousands of documents that T & N claims are protected by the attorney-client privilege. This examination is to take place before an adjudication on the merits of the claims of privilege. We have no jurisdiction to review interlocutory discovery orders and dismiss the appeal. Alternatively, T & N petitions for a writ of mandamus vacating the order. Because the issues raised by the discovery order are important and of first impression and because the procedure prevents parties from effectively asserting the attorney-client privilege before disclosure to opposing counsel, we issue the writ.
 
 BACKGROUND
 
 2
 Chase filed the instant action in the Southern District in 1987, seeking compensatory and punitive damages from T & N for damage to Chase's corporate headquarters caused by the installation of asbestos fireproofing materials. In December 1990, Judge Broderick referred the case to Magistrate Judge Roberts for all pretrial proceedings.
 
 
 3
 During the course of the next year, Chase and T & N served numerous document requests and interrogatories on one another. In responding to Chase's requests, T & N withheld thousands of documents based on an assertion of the attorney-client privilege. At various conferences before the Magistrate Judge, the parties disagreed over the format and scope of the privilege list that T & N produced. T & N contended that a privilege list it had prepared for a prior lawsuit--the so-called "Prudential log"--was sufficient to comply with Local Rule 46(e)(2).[1] Chase, however, argued that the Prudential log did not satisfy Local Rule 46(e)(2).
 
 
 4
 On July 17, 1991, Chase suggested that one means of resolving the claims of privilege would be an attorneys'-eyes-only review of the withheld documents. Chase's attorney, Robert Elliott, explained to the Magistrate Judge:
 
 
 5
 apparently T & N is asserting the privilege with respect to thousands of documents at least. It doesn't seem an appropriate use of the court's time for them to be submitted to your Honor for in camera inspection. We would suggest that they be submitted to Chase's lawyers for an inspection. We would review the documents as to which privilege is asserted and essentially I think be able to as officers of the court divide them into three categories: Document irrelevant; we're not interested, no fight. Documents clearly privileged as to which we would not seek a ruling. Documents which are relevant, interesting and we believe not privileged.
 
 
 6
 The Magistrate Judge did not respond to this suggestion at the time, nor did the parties discuss it further during the July conference. On September 19, 1991, the Magistrate Judge ruled, inter alia, that the Prudential log did not comply with the requirements of Local Rule 46(e)(2) and directed T & N to submit, by November 15, a privilege list containing the information required by that Local Rule. To assist T & N in the preparation of this list, the Magistrate Judge ordered Chase to submit to T & N a list of all documents on the Prudential log that, in Chase's estimation, were not described in sufficient detail to allow Chase to make an informed determination whether to challenge particular claims of privilege.
 
 
 7
 On September 23, another conference was held. At this conference, Chase renewed its suggestion of an attorneys'-eyes-only review by Chase of documents for which T & N was asserting claims of attorney-client privilege. After a brief colloquy with Chase about the usefulness of such a procedure, the Magistrate Judge asked T & N:
 
 
 8
 Why not engage in a process which I can tell you has been engaged in repeatedly in litigation of all sorts, at least that I've handled in which these documents or at least most of them are made available to plaintiffs counsel on an attorneys'-eyes-only basis and look at the documents, that is, to decide whether or not they have any interest in them or ... whether they agree essentially that they are privileged documents, and then we only litigate about the remaining core that is, as [Chase] put it, of interest to Chase and as to which they challenge the assertion of privilege, whatever that may be[?]
 
 
 9
 T & N refused to consent to this procedure, explaining that it was concerned that, if it agreed, courts in other jurisdictions might interpret the agreement as a waiver by T & N of the attorney-client privilege with respect to the documents in question. The Magistrate Judge noted, however, that "[i]t can't be a waiver if you are ordered to do it by the court." After further discussion, the Magistrate Judge directed T & N to provide the documents for review by counsel for Chase. The only documents exempted from this review were so-called "radioactive" documents, in the Magistrate Judge's words, "so sensitive from a strategy standpoint or whatever that you simply cannot show them even to Chase's counsel."
 
 
 10
 On September 26, 1991, a conference call was held during which counsel for T & N asked that a special master review the documents in camera and rule on the claims of privilege before disclosure to counsel for Chase. The Magistrate Judge denied this request.
 
 
 11
 On October 7, T & N filed with Judge Broderick objections to the Magistrate Judge's order allowing counsel for Chase to review the documents for which claims of privilege had been made. As an alternative, T & N asked the court to appoint a special master to review the documents in camera and rule on T & N's claims of attorney-client privilege. On November 6, 1991, Judge Broderick overruled T & N's objection without opinion.
 
 
 12
 T & N filed a notice of appeal and sought a stay of the disclosure pending our hearing the appeal. Both the Magistrate Judge and the District Judge denied T & N's application for a stay, as did a panel of this court. The attorneys'-eyes-only review commenced on December 5, 1991. Chase moved to dismiss this appeal for lack of appellate jurisdiction. That motion has been referred to this panel. T & N asks, in the alternative, that we treat the appeal as a petition for a writ of mandamus.
 
 DISCUSSION
 A. Appellate Jurisdiction
 
 13
 We consider first whether we have jurisdiction over T & N's appeal. T & N concedes that the order appealed from is non-final but argues that appellate jurisdiction exists under the collateral order doctrine established in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). This argument, however, is squarely contrary to a long line of cases in this circuit. See, e.g., Xerox Corp. v. SCM Corp., 534 F.2d 1031, 1032 (2d Cir.1976) (per curiam); American Express Warehousing, Ltd. v. Transamerica Ins. Co., 380 F.2d 277, 280 (2d Cir.1967) (The Cohen Court "envisioned immediate appeal in only a 'small class' of cases, a term hardly descriptive of the number of cases raising discovery questions.").
 
 
 14
 Relying upon In re United States, 565 F.2d 19 (2d Cir.1977), cert. denied, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978) ("Socialist Workers "), T & N argues that the collateral order doctrine provides for review of a discovery order when the order in question constitutes a manifest abuse of discretion or creates legal questions of first impression or extraordinary significance. There is language in Socialist Workers that seemingly supports T & N's position. See id. at 22 (review of a discovery order might be allowed where there was "a persistent disregard of the Rules of Civil Procedure or a manifest abuse of discretion ... [or] where the case presents legal questions of first impression or of extraordinary significance"). However, this language relates only to the standards for mandamus review or for certification pursuant to 28 U.S.C. § 1292(b). The pertinent language in Socialist Workers was based on analysis contained in Xerox Corp. and purports to be only a summary, rather than a modification, of that analysis. Socialist Workers, 565 F.2d at 22. In Xerox Corp. we stated that:
 
 
 15
 In recent years we have repeatedly sought to make clear that in the absence of a certification pursuant to 28 U.S.C. § 1292(b) or of a showing of "persistent disregard of the Rules of Civil Procedure," Will v. United States, 389 U.S. 90, 96, [88 S.Ct. 269, 274, 19 L.Ed.2d 305] (1967), or of "a manifest abuse of discretion," Baker v. United States Steel Corp., 492 F.2d 1074, 1077 (2d Cir.1974), on the part of the district court, no jurisdictional basis exists for interlocutory review of pretrial discovery orders....
 
 
 16
 . . . . .
 
 
 17
 No such showing is made here and Judge Newman understandably refused to certify his rulings for appeal pursuant to 28 U.S.C. § 1292(b). This case does not present legal questions of first impression or of "extraordinary significance." ... It is further settled that the exception created by Cohen ... to the finality requirement cannot be employed to obtain interlocutory review of discovery orders.
 
 
 18
 534 F.2d at 1031-32 (some citations omitted). The cited portions of both Will v. United States, 389 U.S. at 96, 88 S.Ct. at 274, and Baker v. United States Steel Corp., 492 F.2d at 1077, are discussions of standards governing issuance of writs of mandamus. Thus, while Xerox Corp. refers to a "manifest abuse of discretion" and a "persistent disregard of the Rules of Civil Procedure" as predicates to appellate court review, the review contemplated was pursuant to a petition for a writ of mandamus. And it is self-evident that in discussing "legal questions of first impression or of 'extraordinary significance,' " the Xerox Corp. opinion was referring only to the standards for certifying a case for appeal pursuant to 28 U.S.C. § 1292(b).
 
 
 19
 In short, Xerox Corp. provides no support for an assertion of jurisdiction in the instant matter, and nothing in Socialist Workers holds otherwise. We thus reaffirm our long-stated view that Cohen does not provide jurisdiction to review interlocutory discovery orders. Because Judge Broderick refused to certify an appeal from the challenged order pursuant to 28 U.S.C. § 1292(b), we have no jurisdiction over this appeal and grant Chase's motion to dismiss.
 
 B. Review By Mandamus
 
 20
 We have in the past treated appeals dismissed for lack of jurisdiction as petitions for a writ of mandamus. See Caribbean Trading & Fidelity Corp. v. Nigerian Nat'l Petroleum Corp., 948 F.2d 111, 115 (2d Cir.1991), petition for cert. filed, --- U.S. ----, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992); Richardson Greenshields Sec., Inc. v. Mui-Hin Lau, 825 F.2d 647, 652 (2d Cir.1987). Unlike other circuits, we have rarely used the extraordinary writ of mandamus to overturn a discovery order involving a claim of privilege. See In re Weisman, 835 F.2d 23, 26 n. 3 (2d Cir.1987); see also 16 C. Wright, A. Miller & E. Cooper et al., Federal Practice and Procedure § 3935, at n. 20 (1977 & Supp.1991) (citing cases that used mandamus to review claims of privilege).
 
 
 21
 Such a use of the writ is not, however, without precedent. See In re von Bulow, 828 F.2d 94 (2d Cir.1987). The issue there, stated in somewhat simplified terms, was whether publication of an attorney-authored book that disclosed portions of privileged discussions between the attorney and his client constituted a waiver of the privilege. In holding that it did, the district court had extended the so-called fairness doctrine, which allows a litigant discovery of the entirety of an otherwise privileged communication when the adversary discloses only a portion, to disclosures not made in the course of litigation. This doctrinal extension raised a legal issue of first impression in this circuit, id. at 97-98, and other remedies to preserve the privilege were inadequate, id. at 98-99. Finally, we believed that the order in question presented an issue of great importance or extraordinary significance whose immediate resolution would avert future error and would "provide[ ] a logical method by which to supervise the administration of justice within the Circuit." Id. at 97, 99-100.
 
 
 22
 In sum, we will exercise mandamus review of discovery orders relating to claims of privilege where: (i) an issue of importance and of first impression is raised; (ii) the privilege will be lost in the particular case if review must await a final judgment; and (iii) immediate resolution will avoid the development of discovery practices or doctrine undermining the privilege.
 
 
 23
 The facts in the instant matter are more compelling with regard to the need for the use of mandamus than those in In re von Bulow. Because the Magistrate Judge has not yet ruled on any of T & N's claims of privilege, the procedure employed calls for disclosure of documents to adversary counsel even though the documents may be clearly privileged. When this procedure is used, the protection afforded by the attorney-client privilege is limited to the inadmissibility of confidential communications at trial because a claim of privilege will be resolved only after disclosure to the adversary. Moreover, were we to fail to act now, use of the procedure might become widespread. Appellate review would occur only when a final judgment is rendered in litigation in which a party can show prejudice on appeal, an event not likely to occur in the near future. Meanwhile, the attorney-client privilege will have been undermined.
 
 
 24
 The attorney-client privilege prohibits disclosure to adversaries as well as the use of confidential communications as evidence at trial. It is true that adversary counsel receive privileged materials in cases in which an erroneous denial of a claim of privilege is reversed on appeal. Our research suggests, however, that few trial court decisions rejecting claims of attorney-client privilege are reversed on appeal--erroneous disclosure is thus rare--whereas the procedure in question renders the disclosure of privileged materials inevitable. We acknowledge that "the argument that the cat is being let out of the bag could logically be made in any case where a court rejects a claim of work product or attorney-client privilege." In re Weisman, 835 F.2d at 26. There is an important difference here, however. In In re Weisman and similar cases, the petitioner sought review of a district court's rulings on the merits that particular communications were or were not privileged or that the privilege had or had not been waived. In such cases, the district court has already ruled on the applicability of the privilege. Here, disclosure is compelled before a ruling on the merits.
 
 
 25
 We turn now to the merits of the order allowing Chase to review T & N documents that may be protected by the attorney-client privilege. The Magistrate Judge stated that such a procedure "has been engaged in repeatedly in litigation of all sorts, at least that I've handled." We disagree with the Magistrate Judge's statement that adversary review of documents subject to an unadjudicated claim of attorney-client privilege is a common or well established procedure. Our research suggests that, on the contrary, such a procedure is, but for one precedent, non-existent.
 
 
 26
 We may quickly put aside cases involving other privileges where disclosure limited to opposing counsel maintains confidentiality with regard to persons whose use of the information would materially erode the privilege. For example, where the informer's privilege is interposed, counsel may in appropriate cases learn the identity of an informer under an obligation as an officer of the court not to disclose that identity to the client or others. See, e.g., Socialist Workers, 565 F.2d at 23. Similarly, an attorney may in appropriate cases learn an adversary's trade secrets under an obligation not to disclose them to clients or others who might put them to commercial use. See, e.g., Chesa Int'l, Ltd. v. Fashion Assocs., Inc., 425 F.Supp. 234, 237 (S.D.N.Y.), aff'd, 573 F.2d 1288 (2d Cir.1977); Xerox Corp. v. International Business Machines Corp., 64 F.R.D. 367, 370 (S.D.N.Y.1974) (in trade secrets action, certain documents made available on a "counsel only" basis).
 
 
 27
 In the case of the attorney-client privilege, however, a litigant claiming the privilege would probably prefer almost anyone other than adversary counsel to review the documents in question. The attorneys'-eyes-only condition simply does not limit disclosure to persons whose knowledge of the confidential communication is not material to the purpose of the privilege. To the contrary, it allows one kind of critical disclosure--to opposing counsel in litigation--that the privilege was designed to prevent.
 
 
 28
 With one exception, we need not discuss the cases cited by Chase because none involve the attorney-client privilege and the pre-adjudication disclosure directed here. The exception is United States v. Nicolet, No. 85-3060 (E.D.Pa. Dec. 28, 1988). In that case, in which T & N was a defendant, the district court appears to have ordered an attorneys'-eyes-only review by the plaintiff of some of the same T & N documents that are subject to claims of privilege in the instant matter. This unreported decision by a district court in another circuit, which contains an order but no reasoning, has no precedential value and need not detain us other than as an occasion to note that it is the sole precedent for the procedure ordered here.
 
 
 29
 Our inability to find cases approving pre-adjudication disclosure does not of course compel the conclusion that a district court has no authority to order such a procedure. But a consideration of the goals of the attorney-client privilege, as well as the adverse effects of attorneys'-eyes-only review, does lead us to that conclusion. The privilege rests on the belief that in an adversary system, a client's full disclosure to an attorney is a necessary predicate to skillful advocacy and fully informed legal advice. The existence of the privilege thus allows attorneys to assure clients that any information given to their attorneys will remain confidential. See United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991).
 
 
 30
 If opposing counsel is allowed access to information arguably protected by the privilege before an adjudication as to whether the privilege applies, a pertinent aspect of confidentiality will be lost, even though communications later deemed to be privileged will be inadmissible at trial. Most importantly, an attorney cannot assure a client of complete confidentiality if the procedure at issue here becomes routine. At best, an attorney can assure the client that the communication, although made known to adversaries, will not be admissible as evidence at trial. This limited assurance, however, will not suffice to ensure free and full communication by clients who do not rate highly a privilege that is operative only at the time of trial.
 
 
 31
 We appreciate that the Magistrate Judge attempted to limit the disclosure to counsel for Chase by exempting so-called "radioactive materials" from her order. However, the lack of any standard definition of what constitutes such materials, and the rather plain implication that the "radioactive" concept is in no way coterminous with the attorney-client privilege, precludes our relying on it as a substitute for a pre-disclosure adjudication.
 
 
 32
 We also appreciate that the Magistrate Judge sought an economical means to accomplish the awesome task of testing claims of privilege concerning thousands of documents. To some extent, however, the economies seemingly offered by this procedure, if it becomes widely used, will be offset by "fruit of the poisoned tree" arguments that will inevitably arise when an adversary attorney is allowed to see documents that are later held to be privileged and inadmissible at trial. Such documents may alert adversary counsel to evidentiary leads or give insights regarding various claims and defenses. Moreover, attorneys cannot unlearn what has been disclosed to them in discovery. Some of the economies gained by the practice of pre-adjudication disclosure may thus be offset by later proceedings seeking to unscramble the effects of the disclosure of materials subsequently held to be privileged. Our research suggests that the present practice of pre-disclosure adjudication avoids all but a small number of unscrambling problems.
 
 
 33
 Chase contends that even though application of this procedure may be wrong when used in other litigation, the Magistrate Judge had the authority to order it here because T & N failed to serve a privilege list that complied with Local Rule 46(e)(2). We express no opinion as to whether T & N complied with Local Rule 46(e)(2). That issue became moot when the Magistrate Judge ordered disclosure of all the allegedly privileged documents to counsel for Chase. Now that we have vacated that order, the issue will presumably become live again in subsequent proceedings.
 
 
 34
 We also note that the Magistrate Judge is not without recourse if T & N makes frivolous claims of privilege or fails to comply with Local Rule 46(e)(2). Rule 26(g), Fed.R.Civ.P., empowers a district court to impose a variety of sanctions for improper claims of privilege. For example, if the Magistrate Judge finds that T & N's claims of privilege are not warranted by existing law or by a good faith argument for a change in law, or were interposed for an improper purpose, she may require T & N to pay Chase's resulting expenses, including attorneys' fees. See Fed.R.Civ.P. 26(g). Those expenses, moreover, might include Chase's share of the costs of using a special master to the extent the master had to rule on claims of privilege that violated Rule 26(g). In addition, as Chase points out, the failure to comply with Rule 46(e)(2) may result in a finding that the privilege has been waived. See, e.g., Grossman v. Schwarz, 125 F.R.D. 376, 386-87 (S.D.N.Y.1989) ("failure to comply with the explicit requirements of Rule 46(e) will be considered presumptive evidence that the claim of privilege is without factual or legal foundation").
 
 
 35
 Finally, as noted above, Chase has begun its review of the documents in question and may already have examined privileged information. We of course express no opinion regarding the need for steps to eliminate any prejudice to T & N that may have occurred. Nor do we express an opinion on whether use of the clearly permissible method of in camera review by a special master is the appropriate means of resolving the merits of the claims of privilege.
 
 CONCLUSION
 
 36
 In sum, we reaffirm our long-standing view that interlocutory discovery orders are not appealable and dismiss the appeal for lack of jurisdiction. However, because of the unusual nature of the challenged discovery order and the significant and important issues it raises relating to the attorney-client privilege, we entertain the petition for a writ of mandamus. We believe that requiring a litigant to turn over documents subject to a claim of attorney-client privilege to opposing counsel, without a judicial ruling on the merits of the claim, will undermine the attorney-client privilege. Thus, we grant the petition for a writ of mandamus and vacate the discovery order in question. Pending issuance of the mandate, we stay the order, effective forthwith. Chase's review of the documents shall thus cease as of the date of this opinion.
 
 
 
 [1]
 Rule 46(e)(2) reads as follows:
 (e)(2) a claim of privilege is asserted in objecting to any interrogatory or document demand, or sub-part thereof, and an answer is not provided on the basis of such assertion,
 (i) the attorney asserting the privilege shall in the objection to the interrogatory or document demand, or sub-part thereof, identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and
 (ii) the following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:
 (A) for documents: (1) the type of document; (2) general subject matter of the document; (3) the date of the document; (4) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other;
 (B) for oral communications: (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and place of communication; (3) the general subject matter of the communication.