# In re DOW CORNING CORPORATION, Petitioner.

### Docket No. 00–3036.

United States Court of Appeals, Second Circuit.

Submitted May 30, 2000.

Decided Aug. 06, 2001.

Hugh R. Whiting, Richard I. Werder, Jr., Jones, Day, Reavis & Pogue, Cleveland, OH, for Dow Corning Corporation, Petitioner.

Jeffrey A. Klafter, Bernstein Litowitz Berger & Grossman LLP, New York, NY, (Judith Spanier, Nancy Kaboolian, Abbey, Gardy & Squitieri, LLP, New York, NY, of Counsel), for Corning Investor Plaintiffs–Respondents.

M. Richard Komins, Barrack, Rodos & Bacine, Philadelphia, PA, (Daniel Scotti, Milberg Weiss Bershad Hynes & Lerach

LLP, New York, NY, of Counsel), for Dow Chemical Investor Plaintiffs–Respondents.

Jeremy G. Epstein, Alice D. Keane, Shearman & Sterling, New York, NY, and Herbert L. Zarov, Bennett W. Lasko, Mayer, Brown & Platt, Chicago, IL filed a brief on behalf of Defendants–Amici Curiae Corning Incorporated and The Dow Chemical Company, respectively, in support of Petitioner.

Before PARKER and KATZMANN, Circuit Judges, and BRIEANT,* District Judge.

PER CURIAM:

The petitioner, Dow Corning Corporation ("Dow Corning"), seeks a writ of mandamus to vacate an order of the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*), dated April 3, 2000, granting the motion of the respondents ("the Shareholders") to compel the deposition of the petitioner's general counsel concerning communications with the petitioner's board of directors.[1] Because the petitioner has not demonstrated a clear right to the relief sought, we deny the petition.

## I.  BACKGROUND

Dow Corning is a corporation wholly owned and controlled by The Dow Chemical Company ("Dow Chemical") and Corning Incorporated ("Corning") in equal shares. Dow Corning manufactured, among other products, silicone gel-filled breast implants ("silicone implants"). In 1984, the first silicone implant product lia-

bility jury verdict was entered against Dow Corning. In January 1992, the United States Food & Drug Administration declared a moratorium on the use of silicone implants. Thereafter, multiple product liability lawsuits were filed against Dow Corning, Dow Chemical, Corning, and associated individuals. In response, Dow Corning filed for Chapter 11 bankruptcy protection, and those suits against Dow Corning were then stayed as a result.

The class actions filed by the Shareholders alleged, *inter alia*, that the directors of Dow Chemical and Corning violated federal securities law by failing to warn their respective shareholders that Dow Corning faced an imminent onslaught of silicone implant litigation. Due to the bankruptcy stay, Dow Corning was not a party to these actions.

During discovery, the shareholders sought, *inter alia*, to compel the production of Dow Corning's unredacted minutes from Dow Corning board of directors' meetings from 1984 to 1992 at which its general counsel, James R. Jenkins, advised the Dow Corning board regarding then-pending and potential silicone implant tort litigation. Certain directors and/or officers of Dow Chemical and Corning had received copies of the unredacted minutes in their capacity as directors of Dow Corning. Notwithstanding its recognition that Dow Corning's attorney-client privilege and the work-product doctrine covered the board meeting minutes, the district court, after an *in camera* inspection, ordered production under a protective order purportedly designed to safeguard Dow Corn-

---

* The Honorable Charles L. Brieant, of the United States District Court for the Southern District of New York, sitting by designation.

1. Respondents are the class action plaintiff-shareholders of Dow Chemical Corporation and Corning, Inc., which corporations (defendants below) are the sole shareholders of Peti-

tioner. In accordance with Fed.R.App.P. 21(a)(1), Dow Chemical and Corning, as parties below, are technically respondents in this Court. However, only the Dow Chemical and Corning plaintiffs-shareholders were ordered to respond to the petition. The corporate defendants have participated as *Amici Curiae*.

ing's privileges and prevent further dissemination. The protective order provided, *inter alia*, that the minutes would be shown only to lead counsel and certain "Authorized Persons"; would be used only in connection with the present litigation; and would be returned after entry of judgment; and that production of the minutes would not constitute waiver of the attorney-client, work-product, or any other privilege. In part, the court reasoned that production of the minutes was necessary for resolution of Dow Chemical's and Corning's summary judgment motion. Complying with the district court's order, Dow Chemical and Corning—*not* Dow Corning—produced the unredacted board minutes.

The Shareholders also sought to depose Jenkins regarding his communications with Dow Corning's board. Dow Chemical and Corning both opposed the motion on the grounds that the Shareholders had already been provided with all the objective facts about Dow Corning's silicone implant litigation exposure in the 1980s, and that neither this information, nor the deposition testimony of individuals who attended Dow Corning board meetings and heard quarterly silicone implant litigation reports from Jenkins, demonstrated that there was any basis for a "reasonable director [to] conclude[ ] that Dow Corning faced mass tort liability." Dow Corning asserted its attorney-client privilege and the attorney work-product doctrine with respect to Jenkins's testimony. Although the district court repeatedly recognized that Dow Corning holds a privilege with respect to Jenkins's communications with the board, it nevertheless granted the motion to compel and ordered that Jenkins be deposed pursuant to a purportedly privilege-safeguarding protective order which was in material respects the same as the order issued in connection with the disclosure of the minutes. According to the

district court, Dow Corning was entitled to assert the privilege, but Dow Chemical and Corning were not; hence, the protective order served to balance the Shareholders' right to discover relevant evidence while purportedly safeguarding Dow Corning's valid privilege. The district court's protective order also indicated that the defendants and Dow Corning were not permitted to object or assert privilege at the anticipated Jenkins deposition.

Dow Corning thereafter filed the instant mandamus petition requesting that this Court vacate the district court's deposition order as "unprecedented." In May 2000, this Court directed the Shareholders to respond to Dow Corning's mandamus petition. Subsequent to the filing of that response, Dow Corning filed a reply brief, and Dow Chemical and Corning, as *amici curiae*, jointly filed a brief in support of Dow Corning's petition.

## II. DISCUSSION

In support of its petition, Dow Corning argues that no basis exists to support the ordered disclosure of attorney-client communications found by the district court to be privileged. More specifically, Dow Corning asserts that the district court erred in compelling the deposition on the ground that the privileged communications are relevant to the Shareholders' claims and that the protective order sufficiently protected Dow Corning's interests. Dow Corning emphasizes that the district court found that no waiver of the privilege had occurred.

In response, the Shareholders contend that Dow Corning fails to meet the requirements for mandamus relief. In essence, the Shareholders argue that the order directing Jenkins to be deposed is "simply a logical extension" of the order directing the disclosure of the unredacted

board meeting minutes. Thus, according to the Shareholders, either: (1) the protective order that governed the unredacted minutes is sufficient to safeguard the privilege encompassed by Jenkins's testimony, or (2) Dow Corning waived its attorney-client privilege because it allegedly permitted production of the unredacted minutes, albeit pursuant to the district court's order. In framing this argument, the Shareholders maintain that Jenkins is subject to deposition because he will only be questioned about the matters summarized by the minutes that he personally prepared and that have already been produced. As an alternative ground for denying mandamus relief, the Shareholders assert that Dow Corning waived its privilege by permitting witnesses to testify in deposition about communications with Jenkins, an argument not presented to the district court.

■ In our view, the district court may well have erred in ordering the disclosure of the communications at issue. In particular, compelled disclosure of privileged attorney-client communications, absent waiver or an applicable exception, is contrary to well established precedent. Assuming—as the district court did—that the unredacted minutes and testimony about them are privileged, the sanctity of that privilege is established not only by this Court's jurisprudence, but by the Fed-

eral Rules of Civil Procedure. *See* Fed. R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action . . . ." (emphasis added)). Unsurprisingly, the Shareholders fail to cite even a single case involving the attorney-client privilege that holds to the contrary. More significantly, we have found no authority, nor have the Shareholders supplied us with any, that holds that imposition of a protective order like the one issued by the district court permits a court to order disclosure of privileged attorney-client communications.[2] The absence of authority no doubt stems from the common sense observation that such a protective order is an inadequate surrogate for the privilege. If an adverse party is provided access to privileged material, then "a pertinent aspect of confidentiality will be lost." *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 165 (2d Cir.1992). "The privilege rests on the belief that in an adversary system, a client's full disclosure to an attorney is a necessary predicate to skillful advocacy and fully informed legal advice. The existence of the privilege thus allows attorneys to assure clients that any information given to their attorneys will remain confidential." *Id.*

■ The district court, once it found that the privilege applies, should not then

---

**2.** One case among the federal circuit courts seems to involve a procedure similar to that employed by the court below. In *In re Perrigo Co.*, 128 F.3d 430 (6th Cir.1997), the Sixth Circuit affirmed a district court order requiring production of a privileged attorney-client communication to a group of shareholder plaintiffs in a derivative action under a protective order prohibiting further dissemination to others, including plaintiffs in a separate class action securities fraud lawsuit. *See id.* at 432, 434–35, 438. Construing a Michigan statute pertaining to the right of a company's disinterested independent directors to terminate a derivative action in good faith

after a reasonable investigation, the district court held that "[a]s a matter of fairness and practicality" the derivative-action plaintiffs were entitled to the document, which was a report on the merits of maintaining or terminating the action prepared by the lone disinterested director with the assistance of counsel, in order to respond to that director's motion to dismiss, which was based on the report. *Id.* at 432–33, 438. Consequently, the district court in *Perrigo* found, in effect, that the communication was subject to a state-law exception to the privilege similar to the "good cause" exception discussed *infra*.

have ordered the deposition of Jenkins without a prior finding that Dow Corning has waived the privilege or that an exception applied to withdraw the communications at issue from the purview of the privilege. However, the district court's ruling does not necessarily lead us to conclude that a writ of mandamus should issue.

■ Mandamus is a remedy rarely granted by this Court. *See id.* at 163 ("Unlike other circuits, we have rarely used the extraordinary writ of mandamus to overturn a discovery order involving a claim of privilege."). "This Court will grant a mandamus petition only where the petitioner's right to relief is clear and indisputable." *In re F.C.C.*, 217 F.3d 125, 134 (2d Cir.) (citations and internal quotation marks omitted), *cert. denied sub nom., NextWave Personal Communications, Inc. v. F.C.C.*, 531 U.S. 1029, 121 S.Ct. 606, 148 L.Ed.2d 518 (2000); *accord Kerr v. United States Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). Where the record below is "ambiguous," the writ of mandamus will not issue. *Roberts v. United States Dist. Court for the N. Dist. of Cal.*, 339 U.S. 844, 845, 70 S.Ct. 954, 94 L.Ed. 1326 (1950).

■ As the Fifth Circuit noted in a mandamus case involving a district court's refusal to bar discovery on the grounds of privilege, "we are faced with a difficult issue, on an incomplete record, and in the awkward context of mandamus." *Holiday Inns, Inc. v. Fay*, 451 F.2d 343, 343 (5th Cir.1971) (citation and internal quotation marks omitted). Much the same can be said about this case in which there are significant legal issues that this Court is unable to resolve on this exceptionally sparse record. The scanty record before us does not even include the board meeting minutes which are at the heart of this controversy. As a result, we are unable to determine whether the communications at issue were in fact privileged, and if so, whether one or more exceptions to the privilege applies. In particular, on this record we are unable to determine the proper scope of the attorney-client privilege for statements by Jenkins. The petitioner concedes that the apparent factual basis of the conversations with the board—the objective facts concerning the silicone implant litigation—is not confidential. Under a more narrow formulation of the reach of the attorney-client privilege, *see, e.g., In re Six Grand Jury Witnesses*, 979 F.2d 939, 943–44 (2d Cir.1992), *cert. denied sub nom., Xyz Corp. v. United States*, 509 U.S. 905, 113 S.Ct. 2997, 125 L.Ed.2d 691 (1993); *United States v. Silverman*, 430 F.2d 106, 121 (2d Cir.1970), *modified on rehearing*, 439 F.2d 1198 (2d Cir.1970); *Colton v. United States*, 306 F.2d 633, 637, 639 (2d Cir.1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963), it could be suggested that statements by the attorney are not privileged to the extent they do not reveal client confidences. A broader formulation, *see, e.g., Gould Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 679 (2d Cir.1987); *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1036–38 (2d Cir. 1984), would likely cover these communications. *See generally* Paul R. Rice, *Attorney–Client Privilege: Continuing Confusion about Attorney Communications, Drafts, Pre-existing Documents, & the Source of the Facts Communicated*, 48 Am.U.L.Rev. 967, 969–83 (1999).

This record also leaves us unable to determine definitively the applicability of the work product doctrine and whether the particular circumstances of this case justify overriding that protection. *See, e.g., United States v. Adlman*, 134 F.3d 1194, 1196–1205 (2d Cir.1998). Similarly, the

district court did not explicitly address, and we cannot resolve on this record, potentially significant issues of state corporate law, for instance whether a state law mechanism exists that could give the shareholders access to privileged corporate communications. Finally, the district court did not explicitly address, and we are unable to determine on this record, whether other grounds may exist for disclosure of the communications, for instance, waiver or the application of the shareholder "good cause" exception to the attorney-client privilege announced in *Garner v. Wolfinbarger,* 430 F.2d 1093, 1104 (5th Cir.1970), *cert. denied sub nom., Garner v. First Am. Life Ins. Co.,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971). In these circumstances, we will not issue a writ of mandamus. *See Holiday Inns,* 451 F.2d at 344; *see also* Fed.R.App.P. 21(a)(2)(C) ("The petition [for a writ of mandamus] must include a copy of any … parts of the record that may be essential to understand the matters set forth in the petition.").

Some or all of these issues may well be appropriate for the district court's consideration on remand. We leave it to the district court in the first instance to address and resolve these difficulties. The district court should consider, however, that relevance without more does not override the privilege, and that a protective order will not adequately safeguard the privilege holder's interests such that the attorney-client privilege may be neglected.

## III.  CONCLUSION

In sum, the petitioner has not demonstrated a clear entitlement to the relief sought; therefore the writ of mandamus will not issue.

PARKER, Circuit Judge, respectfully dissenting:

Although I agree with most of what the majority says in its opinion, I part ways when it comes to the question of relief. In my view, the district court committed clear error in ordering the disclosure of material, which the court itself determined to be privileged, without a prior finding that the privilege had been waived, or that an exception to the privilege applied.

While the majority is quite correct that mandamus is a remedy rarely granted by this Court, nevertheless,

we will exercise mandamus review of discovery orders relating to claims of privilege where: (i) an issue of importance and of first impression is raised; (ii) the privilege will be lost in the particular case if review must await a final judgment; and (iii) immediate resolution will avoid the development of discovery practices or doctrine undermining the privilege.

*Chase Manhattan Bank, N.A. v. Turner & Newall, PLC,* 964 F.2d 159, 163 (2d Cir. 1992) (issuing writ vacating discovery order that required party to produce documents subject to a claim of attorney-client privilege prior to a ruling on the merits of the objection).

Here, all three prerequisites for review exist. First, the district court's order presents an issue of critical importance to the preservation of the privilege and an issue of first impression in this Circuit—whether a court may order disclosure of privileged attorney-client communications absent a determination that a waiver has occurred or that an exception to the privilege applies where the district court makes the disclosure subject to a protective order intended to safeguard the privilege holder's interests and prevent further dissemination. Second, even if the district court precludes the shareholders from introducing the general counsel's deposition testimony at trial, the essence of the privilege—confidentiality of attorney-client

communications—will be vitiated if Dow Corning must await a final judgment before seeking review of the order. Third, although the district court's order has no precedential value, such an order from the Southern District has the potential to serve as a catalyst for the development of a discovery practice grounded in nothing more than the notions that (1) relevance, without more, may override the privilege, (2) a protective order will safeguard the privilege holder's interests, including prevention of further disclosure, and (3) the disclosure will not be considered a waiver by other courts simply because this particular trial court has so declared. Consequently, I would hold that mandamus review is appropriate.

Turning to the merits of the district court's order, I begin by noting that significant legal issues went unaddressed by the district court, issues that cannot be resolved at the appellate level on this exceptionally sparse record. Invoking Professor Wigmore's famous formulation, this Court has previously stated:

> The privilege applies so that (1)[w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance *permanently protected* (7) *from disclosure* by himself or the legal adviser, (8) *except the protection be waived.*

*In re Richard Roe, Inc.*, 68 F.3d 38, 39–40 (2d Cir.1995) (alteration in original) (emphasis added) (citing *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir.1961)). We have also held that the privilege extends to information contained in communications from the attorney to the client for the purpose of rendering legal advice, *see, e.g., In re Six Grand Jury Witnesses*, 979 F.2d 939, 945–46 (2d Cir.1992) ("Where the client is a corporation, as here, the privilege extends to communications between a lawyer and his or her client—both information provided to the lawyer by the client and professional advice given by an attorney that discloses such information."), and to the very "communications between [a law firm] and its clients for the purpose of obtaining or rendering legal advice, conducting the negotiation of [a] settlement, or defending [a] lawsuit," *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 679 (2d Cir.1987). Although we have not been entirely consistent in our holdings as to the scope of the attorney-client privilege, suffice it to say that confidential communications between an attorney and his or her client, and the information contained therein, are protected when they are made for the purpose of rendering legal advice. In this case, the district court failed to make clear whether the unredacted minutes, and testimony about them, qualify under this standard. With the exceptionally sparse record before us, we are unable to do so ourselves.

Similarly, the privilege may not exist because Delaware law (to the extent it applies here) provides for shareholder and director access to books and records. *See* Del.Code Ann. tit. 8, § 220 (1999). Shareholders can even access privileged communications contained in such books and records upon a showing of "good cause," based on the *Garner* test discussed *supra* at pp. 286–86. *See Grimes v. DSC Communications Corp.*, 724 A.2d 561, 568 (Del. Ch.1998). Whether these conditions have been met such that Delaware law operates to defeat the confidential nature of the information contained in the unredacted minutes, and therefore to defeat the privilege, went unaddressed by the district court. Again, it is a question that we are unable to answer on the record before us and that is distinctly appropriate for the district court's determination on remand.

Accordingly, I would issue the writ of mandamus and vacate the discovery order at issue, while making it clear that the district court could revisit the issue on remand. Specifically, the court could determine whether the privilege has been waived, or that the communications fall within an exception to the privilege. I would also make it clear that such a conclusion would not represent a departure from our noted reluctance to issue writs of mandamus in discovery disputes.