In re FEDERAL COMMUNICATIONS
COMMISSION, Petitioner.

No. 992, Docket 99–5063.

United States Court of Appeals,
Second Circuit.

May 25, 2000.

128

Mary Jo White, United States Attorney for the Southern District of New York, New York, N.Y. (Daniel S. Alter, Gideon A. Schor, Assistant United States Attorneys, on the brief), for Petitioner.

Donald B. Verrilli, Jr., Washington, DC (Ian Heath Gershengorn, Jenner & Block, Washington, DC; and Deborah L. Schrier–Rape, Gregory H. Bevel, Andrews & Kurth LLP, Dallas, TX, on the brief), for Respondents NextWave Personal Communications Inc. et al.

David M. Friedman, New York, N.Y. (Michael C. Harwood, Robert M. Novick, Kasowitz, Benson, Torres & Friedman LLP, on the brief), for Respondent Official Committee of Unsecured Creditors.

Timothy B. Dyk, Washington, DC (Fordham E. Huffman, Paul E. Harner, Jones, Day, Reavis & Pogue, Washington, DC; Leonard J. Kennedy, Christina H. Burrow, Dow, Lohnes & Albertson, Washington, DC; Kathryn A. Zachem, L. Andrew Tollin, Kenneth D. Patrich, Wilkinson Barker Knauer, LLP, Washington, DC; Michael F. Altschul, Cellular Telecommunications Indus. Assoc., Washington, DC; M. Robert Sutherland, Charles P. Featherstun, David G. Richards, BellSouth Corp., Atlanta, GA; Thomas Sidman, Nextel Communications, Inc., Reston, VA; Jack D. Ellis, Wayne Watts, Carol Tacker, SBC Communications, Inc., San Antonio, TX; and Julie Kane, Jeffry A. Brueggeman, U.S. West Wireless, LLC, Denver, CO, on the brief), for amici curiae Cellular Telecommunications Indus. Assoc., BellSouth Corp., Nextel Communications, Inc., SBC Communications Inc., and U.S. West Wireless, LLC.

Michael E. Wiles, New York, N.Y. (Debevoise & Plimpton, on the brief), for amicus curiae Joseph Littlejohn & Levy Fund III LP.

Kenneth N. Klee, Los Angeles, CA; Carl Felsenfeld, New York, NY; and Jack F. Williams, Jamaica, NY, amici curiae pro se.

Kenneth G. Roberts, New York, N.Y. (Dennis M. O'Dea, Wolf, Block, Schorr & Solis–Cohen LLP; and Norman A. Olch, New York, NY, on the brief), for amici curiae Wireless Pathways, Inc., New Wave, Inc., All Cellular, Inc., SGA, Inc. d/b/a Americom Communications, and Flagship Wireless, Inc.

James Gadsden, New York, N.Y. (Carter, Ledyard & Milburn, on the brief), for amici curiae Global Crossing Ltd. and Liberty Media Corp.

William F. Gray, Jr., New York, N.Y. (Robert S. Appel, Emanuel C. Grillo, Mark Brent Joachim, David A. Sullivan, Salans Hertzfeld Heilbronn Christy & Viener, on the brief), for amicus curiae D & P NewtWave Partners, LP.

Alan D. Scheinkman, Westchester County Attorney, White Plains, NY, for amicus curiae County of Westchester.

Before: McLAUGHLIN, JACOBS and SACK, Circuit Judges.

JACOBS, Circuit Judge:

The Federal Communications Commission ("FCC") petitions this Court for a writ of mandamus to the United States Bankruptcy Court for the Southern District of New York (Hardin, *B.J.*). On February 7, 2000, the bankruptcy court issued an order prohibiting the FCC from re-auctioning spectrum licenses previously held by debtor NextWave Personal Communications, Inc. ("NextWave"). The FCC argues that the bankruptcy court's order violated this Court's mandate, expressed in *In re NextWave Personal Com-*

*munications, Inc.,* 200 F.3d 43 (2d Cir. 1999) (*NextWave* Appeal), which held that it was beyond the bankruptcy court's jurisdiction "to mandate that a licensee be allowed to keep its license despite its failure to meet the conditions to which the license is subject." *Id.* at 54.

In our *NextWave* decision, this panel (1) rejected the bankruptcy court's determination that the FCC's requirement of full payment as a condition for spectrum licensure lacked a regulatory purpose, and (2) reversed a judgment modifying that condition. On remand, the bankruptcy court has (1) determined that the FCC's requirement of timely payment as a licensing condition is without regulatory purpose, and (2) nullified an FCC decision based on an asserted violation of that condition. The FCC contends that the *timely*-payment requirement (like the *full*-payment requirement) is (1) a regulatory condition for licensure, (2) within this Court's *NextWave* mandate, and (3) in any event, outside the limited jurisdiction of the bankruptcy court.

Because we conclude that the bankruptcy court's ruling violates our prior mandate, and that the FCC's licensing decisions are subject to the exclusive jurisdiction of the federal courts of appeals and outside the limited jurisdiction of the bankruptcy court, the petition is GRANTED. We make no comment on the prospects of the (precautionary) appeals filed

by NextWave in the Court of Appeals for the District of Columbia Circuit.

## BACKGROUND

### A. The previous appeal[1]

In summer 1996, NextWave was the high bidder at FCC auctions for 63 personal communications services ("PCS") spectrum licenses (the "Licenses"). NextWave's winning bids aggregated $4.74 billion. Because NextWave enjoyed the status of a "small business," only ten percent of the amount bid was required to be paid in cash. *See* 47 C.F.R. § 24.711(b)(3). On February 14, 1997, following some further proceedings to correct NextWave's noncompliance with statutory ownership requirements, the FCC granted the Licenses to NextWave, conditioned upon issuance of a series of promissory notes for the $4.27 billion balance of NextWave's obligations. NextWave promptly executed the notes.

By the time these notes were executed, further auctions had been conducted at which similar licenses had been auctioned at prices significantly lower than NextWave's winning bids. Alarmed that as a result it had bid beyond its capacity to obtain financing, NextWave sought relief from the FCC and the Court of Appeals for the District of Columbia Circuit. Those efforts were unsuccessful.[2] On June 8, 1999, NextWave filed a bankruptcy petition under Chapter 11 and commenced an adversary proceeding against the FCC.

1. This Court's previous opinion contains a more complete recounting of relevant events that occurred prior to the December 22, 1999 issuance of that opinion. *See NextWave* Appeal, 200 F.3d at 46–50.

2. *See NextWave Telecom Inc. v. FCC,* No. 98–1255, 1998 WL 389116 (D.C.Cir. June 11, 1998) (order denying stay pending review); *In the Matter of Petition of NextWave Telecom, Inc. for a Stay of the June 8, 1998, Personal Communications Services C Block Election Date (Order),* 13 F.C.C.R. 11880, 1998 WL 278735 (FCC June 1, 1998); *see also In the Matter of Amendment of the Commission's Rules Regarding Installment Payment Financing for Personal Communications Services*

*(PCS) Licensees, (Second Report and Order and Further Notice of Proposed Rule Making),* 12 F.C.C.R. 16436, 1997 WL 643811 (FCC Oct. 16, 1997); *In the Matter of Amendment of the Commission's Rules Regarding Installment Payment Financing for Personal Communications Services (PCS) Licensees, (Order on Reconsideration of the Second Report and Order),* 13 F.C.C.R. 8345, 1998 WL 130176 (FCC Mar. 24, 1998); *In the Matter of Amendment of the Commission's Rules Regarding Installment Payment Financing for Personal Communications Services (PCS) Licensees, (Second Order on Reconsideration of the Second Report and Order),* F.C.C. 99–66, 14 F.C.C.R. 6571, 1999 WL 183822 (FCC Apr. 5, 1999).

*See NextWave Personal Communications, Inc. v. FCC (In re NextWave Personal Communications, ·Inc.),* 235 B.R. 263, 267 (Bankr.S.D.N.Y.1998) (*NextWave I*).

In the adversary·proceeding, NextWave alleged that the transaction by which it was granted the Licenses was a fraudulent conveyance and therefore avoidable under § 544 of the Bankruptcy Code. *See id.* at 269 (citing 11 U.S.C. § 544). The FCC argued that the bankruptcy court lacked subject matter · jurisdiction · over NextWave's claim because exclusive jurisdiction to review FCC regulatory actions is lodged in the courts of appeals pursuant to 28 U.S.C. § 2342 and 47 U.S.C. § 402. The bankruptcy court rejected this argument, holding that in its effort to collect the full auction price of the Licenses, the FCC was acting solely as a creditor, and not as a regulator. *See NextWave I,* 235 B.R. at 269–71. The bankruptcy court thus concluded that subject matter jurisdiction was sound and proceeded to try NextWave's claims.

At the conclusion of trial, the bankruptcy court found that at the time the Licenses were granted, they were worth only $1.023 billion (determined by comparison to similar licenses auctioned subsequently), and that any obligation in excess of that amount was avoidable as a constructive fraud. *See NextWave Personal Communications, Inc. v. FCC (In re NextWave Personal Communications, Inc.),* 235 B.R. 277, 304 (Bankr.S.D.N.Y.1999) (*NextWave IV.A*). In effect, the avoidance remedy reduced by more than three-quarters the total amount NextWave had bid at auction. *See* 11 U.S.C. § 544; *NextWave IV.A,* 235

B.R. at 304; *NextWave Personal Communications, Inc. v. FCC (In re NextWave Personal Communications, Inc.),* 235 B.R. 305, 306–07 (Bankr.S.D.N.Y.1999) (*NextWave IV.B*).

The FCC appealed the bankruptcy court's judgment to the United States District Court for the Southern District of New York (Brieant, *J.*), which affirmed for reasons substantially the same as those stated by the bankruptcy court. *See NextWave Personal Communications, Inc. v. FCC (In re NextWave Personal Communications, Inc.),* 241 B.R. 311, 315–16, 319–21 (S.D.N.Y.1999).[3]

The FCC appealed to this Court. On November 24, 1999,·we issued an order (with opinion to follow) reversing the ruling that NextWave's obligation to the FCC was a fraudulent conveyance, and we remanded the case to the bankruptcy court for further proceedings. *See NextWave Appeal,* 200 F.3d at 45–46, 62.

Our opinion issued on December 22, 1999. We explained that spectrum licenses (of which PCS licenses form a subset) are distributed by auction because "a method was· needed that would direct licenses toward those entities and technologies that would put them to the best use," and because "Congress came to the conclusion that using market forces to allocate spectrum" would best achieve such a distribution. *Id.* at 51. · In authorizing the FCC to develop a system of spectrum auctions, Congress had regulatory objectives, and was not chiefly interested in maximizing license-holders' contributions to the fisc:

---

**3.** The district court affirmed five decisions of the bankruptcy court: *In re NextWave Personal Communications, Inc.,* 235 B.R. 314 (Bankr.S.D.N.Y.1999) (June 16, 1999 decision denying the motion to lift the automatic stay) (*NextWave V*); *NextWave IV.A,* 235 B.R. 277 (May 12, 1999 decision on the fraudulent conveyance· claim), *supplemented by NextWave IV.B,* 235 B.R. 305 (June 22, 1999 decision on remedy); *NextWave Personal Communications, Inc. v. FCC (In re NextWave Personal Communications, Inc.),* No. 98–21529 (Bankr.

S.D.N.Y. Apr. 2, 1999) (oral denial of the FCC's motion to dismiss) (*NextWave III*); *NextWave Personal Communications, Inc. v. FCC (In re NextWave Personal Communications, Inc.),* 235 B.R. 272 (Bankr.S.D.N.Y. 1999) (Feb. 16, 1999 decision denying to the FCC and granting to the debtor partial summary judgment with regard to the date upon which the obligations were incurred) (*NextWave II*); and *NextWave I,* 235 B.R. 263 (Dec. 7, 1998 decision granting in part and denying in part the FCC's motion to dismiss).

[T]he broader purpose of [47 U.S.C. § 309(j), the statutory provision authorizing spectrum auctions,] was to create *an efficient regulatory regime* based on the congressional determination that competitive bidding is the most effective way of allocating resources to their most productive uses. The FCC was not asked to sell off the spectrum (something it did not own) in an effort to raise as much money as possible; it was not asked to develop a free-market system to maximize revenue. Instead, it was told to auction licenses to the highest bidder because such a system was thought likely to promote the development of new technologies and encourage efficient use of the spectrum, while simultaneously recouping some of the value of the spectrum for the public.

*NextWave* Appeal, 200 F.3d at 52 (emphasis added; footnote omitted).

Congress mandated that spectrum licenses be distributed by auction because auction "*bids constitute a reliable index of the bidders' commitments to exploit and make the most of the license at issue.*" *Id.* at 59. The auction-based scheme "reflect[s] a classical belief in the efficacy of market forces," the "fundamental rationale" of which is that "[t]hose qualified bidders" most likely to make efficient, technologically dynamic use of the spectrum are, on average, those to whom the spectrum licenses are most valuable, and therefore are "those who should be awarded the licenses." *Id.* at 52–53. Thus the spectrum auctions are "a *regulatory tool* for ensuring that licenses are distributed in the way that fulfils the goals of the [Federal Communications Act ('FCA')]." *Id.* at 53 (emphasis added).

Having determined that the purpose of spectrum auctions was chiefly regulatory, not fiscal, we then turned to the FCC's exclusive jurisdiction over regulation of the spectrum. Noting that the FCC's exclusive jurisdiction over licensing matters extended to the conditions placed on licenses, we held that "[w]hen the FCC decides which entities are entitled to spectrum licenses under rules and conditions it has promulgated," it is exercising a quintessentially regulatory power. *Id.* at 54. We recognized that pursuant to 28 U.S.C. § 2342 and 47 U.S.C. § 402, review of the FCC's regulatory decisions and orders is entrusted solely to the federal courts of appeals and is therefore outside the jurisdiction of the bankruptcy and district courts. *See id.*

Finally, we examined the bankruptcy court's decisions to determine whether they intruded upon the FCC's exclusive jurisdiction over spectrum licensing and the courts of appeals' exclusive jurisdiction to review the FCC's licensing decisions. We determined that the full payment of winning bids was a regulatory condition for the retention of licenses by successful bidders:

> NextWave's inability to follow through on its financial undertakings had more than financial implications. It indicated that under the predictive mechanism created by Congress to guide the FCC, NextWave was not the applicant most likely to use the Licenses efficiently for the benefit of the public in whose interest they were granted. It meant, *in regulatory terms,* that NextWave was not entitled to the Licenses.

*Id.* (emphasis added). Because "[t]he FCC's auction rules ... have primarily a regulatory purpose," we held that the approach taken by the bankruptcy and district courts—which allowed NextWave to keep PCS licenses under conditions that the FCC considered non-compliant—was "fundamentally mistaken." *Id.*

We thus held that even where the regulatory conditions imposed on a license take the form of a financial obligation, the bankruptcy and district courts lack jurisdiction to interfere in the FCC's allocation. Therefore, "even if the bankruptcy and district courts were right in concluding that granting the Licenses at a small fraction of NextWave's original successful bid price best effectuated the FCA's goals,

they were *utterly without the power* to order that NextWave be allowed to retain them for that reason or on that basis." *Id.* at 55 (emphasis added; internal citations omitted).

### B. Subsequent events

On December 16, 1999—after this Court held that the FCC's licensing requirements were not subject to alteration in the bankruptcy court—NextWave filed modifications to its proposed plan of reorganization. Until then, NextWave had been contending that payment of the $4.27 billion still owed was beyond its capacity and that the incurring of the debt was a constructive fraud. But under its proposed modifications to the plan, NextWave would pay in full its overdue obligation to the FCC and undertake to pay the notes as they come due.[4] *See In re NextWave Personal Communications Inc.*, 244 B.R. 253, 262 (Bankr.S.D.N.Y.2000) ("*NextWave VI*").

On January 11, 2000, NextWave sweetened its offer to the FCC and proposed to pay in a single lump sum the present value of its billions of dollars in notes. The lump-sum payment proposal was new and not part of NextWave's proffered modifications.

The day after NextWave's lump-sum offer, on January 12, 2000, the FCC issued a Public Notice of an "Auction of C and F Block Broadband PCS Licenses" (the "Public Notice"), in which the FCC announced the re-auction of the Licenses then held by NextWave. The Public Notice made no mention of the previous licensee, but the FCC's memorandum objecting to the modified reorganization plan explains that the cancellation of the Licenses was occasioned by NextWave's default under the terms of the Licenses. According to the FCC, that default resulted in the

"automatic[ ] cancel[lation]" of the Licenses. *See id.*

In particular, NextWave had failed to make timely payments on the Licenses, as the licensing agreements obligated it to do. The FCC maintains that such a failure results in automatic license cancellation:

> In light of the Second Circuit's ruling, it is clear that the Debtors' C and F block PCS licenses automatically canceled pursuant to the terms and conditions upon which they were granted. Given that a licensee's failure to comply with a license's full and timely payment condition automatically results in the termination of a spectrum authorization, requiring no affirmative steps by the FCC, *see* 47 C.F.R. § 1.2110, ... the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362, are not implicated by the cancellation of the Debtors' C and F block PCS licenses.... Accordingly, the Debtors are divested of their C and F block PCS spectrum rights....

Objection of Federal Communications Commission to Debtors' Modified First Amended Joint Plan of Reorganization, *In re NextWave Personal Communications, Inc.*, No. 98 B 21529(ASH), at 3–4 (Bankr. S.D.N.Y. Jan. 12, 2000) (FCC Objection). According to the Public Notice, the auctions are scheduled for July 26, 2000.

NextWave moved by order to show cause for an order declaring the Public Notice null and void. *See NextWave VI*, 244 B.R. at 257. The bankruptcy court granted NextWave's motion on January 31, 2000, stating the following three reasons:

> (1) Because the Licenses constituted "property of the estate," their revocation (via the Public Notice) violated the automatic stay of the Bankruptcy Code. *See*

---

4. The bankruptcy court characterizes the modifications proposed on December 16 as an offer made "regardless of the outcome of the appeal in the Circuit Court." *In re NextWave Personal Communications Inc.*, 244 B.R. 253, 262 (Bankr.S.D.N.Y.2000). The or-

der reversing the judgment below was issued on November 24, however, so the outcome of the FCC's appeal was known at the time of the proposed modifications. *See NextWave Appeal*, 200 F.3d at 45–46.

*NextWave VI*, 244 B.R. at 266–68 (citing 11 U.S.C. § 362(a)(1), (3)-(6)).

(2) Because the cure provisions of the Bankruptcy Code, 11 U.S.C. §§ 1123(a)(5)(G) and 1124(2)(A), allow NextWave to cure any default—*i.e.*, they allow NextWave to "revers[e]" the event that triggers default—the FCC cannot rely on any default as a premise for revoking the Licenses. *Id.* at 268–69 (citing *Di Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24, 26–27 (2d Cir.1982)).

The bankruptcy court further held that the default cited by the FCC was in fact no default, regardless of the opportunity to cure, because NextWave was barred from making payments absent an order of the bankruptcy court, given subsequent to a hearing: "[T]he debtors had neither the authority nor the ability to make [those] payments absent notice and court approval." *NextWave VI*, 244 B.R. at 274–76; *see also* 11 U.S.C. §§ 102(1), 363. According to the bankruptcy court, NextWave's non-payment was compelled by the automatic stay and therefore cannot be an event of default: "Any notion of a legally cognizable 'default' presupposes that the debtors could have lawfully made post-petition payments to the FCC in the first instance." *Id.* at 274. The bankruptcy court therefore considered it "senseless to speak of a 'default'" in this case. *Id.* at 276.

(3) Under the doctrines of waiver and equitable estoppel, the FCC is now barred from revoking the Licenses because it failed earlier to contend that the Licenses were forfeit. *See id.* at 276–81.

By order dated February 7, 2000, the bankruptcy court granted NextWave's motion for an order enforcing the automatic stay and decreed that the FCC's Public Notice was "null, void, and without force or effect." *In re NextWave Personal Communications Inc.*, No. 98 B 21529(ASH) (Bankr.S.D.N.Y. Feb. 7, 2000) (order enforcing the automatic stay with respect to the Licenses).

The FCC promptly petitioned this Court for a writ of mandamus on the ground that the bankruptcy court's ruling obstructs our mandate.

## DISCUSSION

This Court has the authority to grant writs of mandamus under Rule 21(a) of the Federal Rules of Appellate Procedure; but the standard for issuance is stringent, and such writs are rarely issued. Mandamus is not used simply to correct error. *See Will v. United States*, 389 U.S. 90, 98 n. 6, 88 S.Ct. 269, 275 n. 6, 19 L.Ed.2d 305 (1967); *In re Steinhardt Partners, L.P. (Salomon Bros. Treasury Litig. v. Steinhardt Partners, L.P.)*, 9 F.3d 230, 233–34 (2d Cir.1993). It is reserved for "judicial usurpation[s] of power" by inferior courts. *Will*, 389 U.S. at 95, 88 S.Ct. at 273 (citation and internal quotation marks omitted); *accord Mallard v. United States Dist. Court*, 490 U.S. 296, 309, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989). Mandamus is properly granted for two purposes:

(1) Protection of a superior court's mandate, *see General Atomic Co. v. Felter*, 436 U.S. 493, 497, 98 S.Ct. 1939, 1941, 56 L.Ed.2d 480 (1978), to assure that "the terms of the mandate [are] scrupulously and fully carried out," and that the inferior court's "actions on remand [are] not ... inconsistent with either the express terms or the spirit of the mandate," *In re Ivan F. Boesky Sec. Litig. (Kidder, Peabody & Co. v. Maxus Energy Corp.)*, 957 F.2d 65, 69 (2d Cir. 1992) (citation and internal quotation marks omitted); or

(2) Restraining an inferior court from detours into areas in which it lacks jurisdiction (or, in some instances, forcing an inferior court to take an obligatory action), *see Ex parte Republic of Peru*, 318 U.S. 578, 583, 63 S.Ct. 793, 796–97, 87 L.Ed. 1014 (1943).

Generally, mandamus is appropriate only where no other remedy adequately protects the petitioner's interest. *See In re*

*von Bulow (von Bulow ex rel. Auersperg v. von Bulow)*, 828 F.2d 94, 98 (2d Cir.1987). Such a situation exists where the time required for the ordinary appeals process would deprive the petitioner of the right it claims (here, to re-auction the Licenses on the announced date, July 26, 2000). *See In re King World Productions*, 898 F.2d 56, 58–59 (6th Cir.1990) (listing among the factors to be considered when determining the propriety of mandamus whether "[t]he petitioner will be damaged or prejudiced in a way not correctable on appeal," as well as whether "[t]he district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules"); *cf. In re Cooper*, 971 F.2d 640, 641 (11th Cir.1992) (holding an alternative remedy to be inadequate where it would have caused great delay in the vindication of the petitioners' rights). This Court will grant a mandamus petition only where the petitioner's right to relief is "clear and indisputable." *In re International Bus. Machs. Corp.*, 45 F.3d 641, 643 (2d Cir. 1995) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 18, 103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1983)) (internal quotation marks omitted).

The questions presented by this petition are whether the bankruptcy court's decision amounted to review of the FCC's "regulatory" actions, as we used that term in our opinion of December 22, 1999, *see, e.g., NextWave Appeal*, 200 F.3d at 54; if so, whether that court's actions derogated from "either the express terms or the spirit of the mandate," *In re Boesky*, 957 F.2d at 69; and whether (even absent that mandate) the bankruptcy court exceeded its statutory jurisdiction by engaging in such review. We conclude that the bankruptcy court's decision: (1) amounted to the review of an order or decision of the FCC, for which the bankruptcy court lacks jurisdiction, and (2) contravened this Court's mandate. We therefore grant the petition.

## A. The bankruptcy court's decision

The FCC argues that the requirement of timely payment, like the requirement of payment in full, is driven by regulatory considerations. The Commission further argues that the regulatory nature of the disputed requirement is manifest in this Court's opinion of December 22, 1999.

In the previous appeal, the district court had held that the FCC's claim to full payment "ha[d] nothing to do with the FCC's organization, execution, or implementation of the radio spectrum auction. Neither did the claim implicate the FCC's power to regulate the issuance or use of spectrum licenses." *NextWave Personal Communications, Inc. v. FCC (In re NextWave Personal Communications, Inc.)*, 241 B.R. 311, 315 (S.D.N.Y.1999) (internal quotation marks omitted). We held that such an approach "was fundamentally mistaken." *NextWave* Appeal, 200 F.3d at 54. Recognizing that "NextWave's inability to follow through on its financial undertakings had more than financial implications," we held that the FCC's decision as to "which entities are entitled to spectrum licenses under rules and conditions it has promulgated" is a paradigmatic instance of the FCC's exclusive regulatory power over licensing. *Id.*

The FCC's Public Notice of re-auction presented the bankruptcy court with a variation on the same question: whether it could undo the consequences of NextWave's failure to fulfill the timely-payment requirement under the Licenses, as determined by the FCC. The bankruptcy court properly characterized the issue as whether timely payment was a regulatory condition for licensure, and it then held that this Court's previous mandate does not control that question, *see NextWave VI*, 244 B.R. at 283, that is, that while *full* payment is a regulatory condition, *timely* payment is not. The bankruptcy court's reasoning on this issue is set forth in the margin.[5]

---

**5.** Judge Hardin rejected, as follows, the FCC's contention that this Court's mandate controlled the issue of whether timely payment was a regulatory condition:

Recognizing that it lacked power to review FCC regulatory actions, the bankruptcy court sought to cast the dispute in non-regulatory terms. Thus the court concluded that the FCC's declaration of a default (1) "lack[ed] any comprehensible regulatory objective," *id.* at 270, and (2) was therefore simply the action of an ordinary creditor:

> The Court of Appeals has held that there is a "regulatory" aspect in the FCC's "payment in full" requirement. But no such aspect can be inferred with respect to the FCC's "timely payment" requirement. No rational explanation has been offered to show that timeliness has any objective other than pure debtor-creditor economics.

*Id.* at 281.

■ This statement is at odds with our previous opinion. We expressly deferred to the FCC's "expert judgment as to the course that would best promote congressional objectives and serve the public interest," *NextWave* Appeal, 200 F.3d at 53; and we ultimately held that "[w]hen the FCC decides which entities are entitled to spectrum licenses under rules and conditions it has promulgated, it therefore exercises *the full extent of its regulatory capacity.*" *Id.* at 54 (emphasis added). The

Little need be said of the FCC's contention that the instant motion is governed by the Second Circuit Decision. Ultimately, it will be for the Court of Appeals to resolve this controversy, if the parties do not sooner settle it among themselves. In the meantime, the matter has been remanded to the Bankruptcy Court, and it is the responsibility of this Court to address the issues raised by this motion for review by the District and Circuit Courts.

The Court of Appeals rulings in respect of *NextWave I*, concerning subject matter jurisdiction, and *NextWave II*, concerning fraudulent conveyance analysis, are the law of the case in these proceedings. But they do not touch upon the issues now before this Court, which arise from a subsequent event, the January 12 Declaration. Indeed, in remanding to the Bankruptcy Court, the Court of Appeals specifically referred to the possibility that the FCC might, in the future, seek to revoke the Licenses.

bankruptcy court finds that "[n]o rational explanation has been offered to show that timeliness has any objective other than pure debtor-creditor economics." *NextWave VI*, 244 B.R. at 281. This misses the point. The FCC need not defend its regulatory calculus *in the bankruptcy court;* whenever an FCC decision implicates its exclusive power to dictate the terms and conditions of licensure, the decision is regulatory. And if the decision is regulatory, it may not be altered or impeded by any court lacking jurisdiction to review it.

■ The FCC's decision to re-auction the Licenses previously granted to NextWave is one that implicates the conditions of licensure, in itself a circumstance sufficient to require the bankruptcy court's deference. Moreover, the regulatory purpose for requiring payment in full—the identification of the candidates having the best prospects for prompt and efficient exploitation of the spectrum—is quite obviously served in the same way by requiring payment on time. Given this evident analogy, our analysis of the full-payment obligation (in our previous opinion) should have alerted the bankruptcy court that the FCC's determination as to prompt payment was by nature regulatory. Time of

The FCC relies upon the statement in the Circuit Court Decision that "the FCC made 'full and timely payment of the winning bid' a regulatory condition for obtaining and retaining spectrum license" (200 F.3d at 52). However, the very next sentence states: "This 'payment in full' requirement has a regulatory purpose . . ." (*id.*), and the entire balance of the Circuit Court Decision bearing on the question of regulatory purpose and subject matter jurisdiction is concerned solely with the "payment in full" requirement, which was the only matter before the Court. The Court of Appeals did not consider the question whether the "timely payment" requirement was invested with a regulatory purpose, because the FCC had never asserted any legal position based upon NextWave's failure to make post-petition payments on its pre-petition claims. *NextWave VI*, 244 B.R. at 283 (internal citation omitted).

payment and amount of payment are alike functions of value. *Cf. Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. # 1 (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1022 (1st Cir.1995) ("Time is money....."). There can be little doubt that if full payment is a regulatory condition, so too is timeliness. *See NextWave* Appeal, 200 F.3d at 59–60 (detailing the regulatory purpose behind the FCC's general insistence on payment according to the terms set at auction, so that the "bids constitute a reliable index of the bidders' commitments to exploit and make the most of the license at issue"); *Mountain Solutions, Ltd. v. FCC*, 197 F.3d 512, 522 (D.C.Cir. 1999) ("[T]he Commission ... gave fair notice of the importance it attaches to meeting payment dates...."); FCC Objection at 2–4. "The Commission has long noted the importance it attaches to timely payment." *Mountain Solutions*, 197 F.3d at 519 (citing *In re Implementation of Section 309(j) of the Communications Act, (Second Report and Order)*, 9 F.C.C.R. 2348, ¶ 197, 1994 WL 412167 (FCC April 20, 1994)).

We therefore conclude that the FCC's decision was in fact regulatory. This conclusion is reinforced by the bankruptcy court's own statement of reasons. In the course of deciding that the FCC's re-auction decision lacked any regulatory purpose, the bankruptcy court was in effect and in fact questioning the FCC's regulatory judgments:

> What regulatory principle or public interest does the FCC invoke to outweigh the investment in these debtors of over $1 billion in debt and equity? What public policy is served by an act of the United States Government which violates basic notions of equity, due process and the Bankruptcy Code? What purpose is served by the FCC's relinquishment of over $4.7 billion for the C Licenses? How does the [Public Notice] coexist with 47 U.S.C. § 309(j)(3)(A) looking to "rapid deployment" of spectrum "without administrative or judicial delays," or 47 U.S.C. § 309(j)(7)(A) and (B) prohibiting the FCC from exercising its regulatory discretion "on the expectation of Federal revenues["?]

*NextWave VI*, 244 B.R. at 282–83. Whatever the force of these rhetorical questions, the answers entail regulatory decisions and are outside the jurisdiction of the bankruptcy court.[6]

In considering another of NextWave's arguments, the bankruptcy court explicitly questioned the rationale behind the FCC's decision to re-auction the Licenses:

> Finally, one of the important statutory objectives of FCA § 309(j), rapid deployment and utilization of C and F block spectrum by designated entities, would be undermined by cancellation and reauction of the Licenses. Judging by the C, D, E and F block auctions, it is highly unlikely that licenses auctioned beginning on July 26, 2000 would result in final grant of the Licenses to the high bidders before winter or spring 2001, at which time the designated entity licensees would have to raise the necessary funding to begin building out their PCS systems. NextWave is a designated entity. It was awarded the Licenses in January 1997. It represents that it has already developed the necessary infrastructure to a considerable degree. It is

---

**6.** *See also, e.g., NextWave VI*, 244 B.R. at 263 (in rejecting the FCC's finding of a default, reasoning that "[t]he existence of a default here depends upon an interpretation of the FCC's regulations"); *id.* ("Transcendent considerations of fairness and due process, as expressed in the very statute that governs the FCC, compel the conclusion that the FCC cannot summarily eviscerate the debtors' estate on the basis of a purported 'regulatory default.'"); *id.* at 264 ("The FCC argued that,

despite the language 'will be declared in default,' it was incumbent on the debtors, before a 'default' occurred, to seek an extension or waiver before any discretion of the FCC could be invoked. The history of this regulation indicates otherwise."); *id.* at 281 n. 26 ("[O]ne must wonder what was the impact on [the FCC's regulatory] objective of ... the FCC's numerous regulations, orders, notices and instructions rescheduling and repeatedly changing payment deadlines....").

prepared to put the Licenses into use almost immediately. And all this must be considered in light of the fact that PCS and wireless telephone is developing at lightning speed, such that another year's delay is of great significance.

*Id.* at 271.

Although the bankruptcy court's opinion is stated in terms of whether timely payment is a regulatory condition, the question posed and answered is whether the regulatory condition of timely payment is arbitrary. Elsewhere, the bankruptcy court flatly rejects the idea that the FCC can have anything to say about communications licenses in the hands of debtors: "[O]ne must ask whether there is *any* regulatory concern of such consequence that it should override the protections and policy considerations that lie at the very core of the Bankruptcy Code, or bar jurisdiction of the Bankruptcy Court from enforcing the Code." *Id.* at 282 (emphasis added).

In short, the FCC made timely payment a regulatory condition; and the bankruptcy court has concluded that such a condition is arbitrary, in the sense that it serves no regulatory purpose that the bankruptcy court is prepared to recognize. However, a regulatory condition is a regulatory condition even if it is arbitrary. It is for the FCC to state its conditions of licensure, and for a court with power to review the FCC's decisions to say if they are arbitrary or valid.

## B. Mandamus

■ Our extraordinary mandamus power has two purposes: to achieve compliance with the terms and spirit of our mandates, and to constrain inferior courts to proper exercises of their jurisdiction. In this case, the two uses of mandamus overlap and reinforce one another. This Court's previous opinion reversed a decision of the bankruptcy court on the ground that that court lacked jurisdiction. The bankruptcy court again seeks to control the FCC's allocation of licenses, notwithstanding this Court's express holding that "the bankruptcy and district courts lack[ ] jurisdiction to decide the question of whether NextWave had satisfied the regulatory conditions placed by the FCC upon its retention of the Licenses." *NextWave Appeal*, 200 F.3d at 54. Thus a writ of mandamus protecting this Court's mandate also confines the inferior court to the lawful exercise of its jurisdiction.

### 1. The mandate

Our prior opinion clearly and repeatedly emphasizes that the bankruptcy court is without power to review the FCC's regulatory actions:

> If the conditions to which a license is subject are not met, the FCC may revoke the license. It is beyond the jurisdiction of a court in a collateral proceeding to mandate that a licensee by allowed to keep its license despite its failure to meet the conditions to which the license is subject.
>
> *When the FCC decides which entities are entitled to spectrum licenses under rules and conditions it has promulgated, it therefore exercises the full extent of its regulatory capacity.* Because jurisdiction over claims brought against the FCC in its regulatory capacity lies exclusively in the federal courts of appeals, *see* 28 U.S.C. § 2342; 47 U.S.C. § 402, *the bankruptcy and district courts lacked jurisdiction to decide the question of whether NextWave had satisfied the regulatory conditions placed by the FCC upon its retention of the Licenses.*

*Id.* (emphasis added).

In supporting this jurisdictional holding, this Court discussed the "spheres of authority" within which agencies and courts operate:

> For over fifty years the Supreme Court has recognized that under the FCA the division of authority between these "spheres" requires that "no court can grant an applicant an authorization which the Commission has refused."

*Scripps–Howard Radio v. FCC*, 316 U.S. 4, 14, 62 S.Ct. 875, 86 L.Ed. 1229 (1942). Under the FCA, it is 'the FCC and not the courts that "must be satisfied that the public interest will be served by ... the license." *FCC v. WOKO, Inc.*, 329 U.S. 223, 229, 67 S.Ct. 213, 91 L.Ed. 204 (1946).

*Id.*

■ Our mandate required the bankruptcy court to refrain from impeding the regulatory actions of the FCC, in particular, the FCC's enforcement of the payment schedule established by its regulations, orders, and decisions. The bankruptcy court founds its jurisdiction for doing so chiefly on the automatic stay provision of 11 U.S.C. § 362 and on that court's power under the provision to decide what acts are prevented. The bankruptcy court declared the Public Notice to be null and void because:

> The [Public Notice] implicates subsections (1) and (6) and it unarguably violated subsections (3), (4) and (5) [of 11 U.S.C. § 362(a)]. Accordingly, the [Public Notice] was void.

*NextWave VI*, 244 B.R. at 267–68. The extensive briefing on this petition for mandamus is largely directed to this question.

■ The automatic stay has its limits. Here, the applicable limit is set forth in 11 U.S.C. § 362(b)(4), which provides an exception under paragraphs (1), (2), (3) and (6)[7] for:

> the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

11 U.S.C. § 362(b)(4) (West Supp.1999). Undoubtedly, the FCC is a governmental unit that is seeking "to enforce" its "regulatory power." Nevertheless, the bankruptcy court decided that "[§ ] 362(b)(4) is not applicable here. The FCC's action is nothing other than a direct attempt to enforce its pecuniary interests." *NextWave VI*, 244 B.R. at 274. This observation is flatly incompatible with this Court's mandate, as expressed in our earlier opinion. Because the timing of NextWave's payment obligation—like the amount of it—was a subject of FCC regulation, and therefore within our *NextWave* mandate, the bankruptcy court's decision violated that mandate.[8]

■ In short, notwithstanding the automatic stay provision, the bankruptcy court lacks jurisdiction to decide whether the FCC's regulatory decision is a proper exercise of discretion, or to decide whether it is provident and in the public interest. All of these decisions are within the exclusive jurisdiction of the federal courts of appeals:

> [Petitioner] contends that in order for § 362(b)(4) to obtain, a court must first determine whether the proposed exercise of police or regulatory power is legitimate and that, therefore, in this litigation the lower courts did have the authority to examine the legitimacy of the [agency's] actions and to enjoin those actions. We disagree. [Petitioner's] broad reading of the stay provisions would require bankruptcy courts to scrutinize the validity of every administrative or enforcement action brought against a bankrupt entity. Such a reading is problematic, both because it conflicts with the broad discretion Congress has expressly granted many administra-

---

**7.** Subsections (4) and (5) are concerned with liens. *See* 11 U.S.C. § 362(a)(4), (5). The bankruptcy court does not explain why they are implicated here.

**8.** Though we hold that the FCC's regulatory decisions fall within § 362(b)(4), we have no occasion to opine on whether the Public Notice is valid or whether the Licenses automatically canceled at some prior date.

tive entities and because it is inconsistent with the limited authority Congress has vested in bankruptcy courts. *Board of Governors v. MCorp Fin., Inc.,* 502 U.S. 32, 40, 112 S.Ct. 459, 464, 116 L.Ed.2d 358 (1991). The bankruptcy court lacked jurisdiction to declare the Public Notice null and void on any ground: that the Public Notice violated the automatic stay, that the right to cure obviates any default, or that the government was estopped.

■ NextWave and various amici curiae emphasize that our mandate was limited by the disclaimer in our *NextWave* opinion that "since we do not know what steps the FCC will take vis-à-vis the obligations owed to it by NextWave, any issues created by the FCC's attempts to collect on those obligations are not yet ripe." *Id.* at 59. But the bankruptcy court's latest opinion was not prompted by any *collection* effort; the whole thrust of the opinion is that the FCC is unjustifiably *refusing* to take NextWave's money. In any event, this passage cannot be read as a limitation on the scope or effect of what our opinion actually decided. It is sufficiently clear that the issue raised by the timely-payment requirement was decided in our opinion: "We are merely holding that NextWave may not collaterally attack or impair in the bankruptcy courts the license allocation scheme developed by the FCC." *Id.* at 55. Even if the bankruptcy court is right on the merits of its arguments against revocation—we have no occasion to express an opinion—it is without power to act on its determination:

> [E]ven if the bankruptcy and district courts were right in concluding that granting the Licenses at a small fraction of NextWave's original successful bid price best effectuated the FCA's goals, they were *utterly without the power* to order that NextWave be allowed to retain them for that reason or on that basis.

*Id.* (citation omitted; emphasis added).

The bankruptcy court construes our mandate to mean no more than that the bankruptcy court may not abrogate the full-payment requirement on the basis of a fraudulent-conveyance holding. This under-reads our previous opinion. True, the immediate effect of the mandate was to prohibit abrogation of the full-payment requirement; but the opinion clearly instructs the bankruptcy court to refrain from interfering with the licensing decisions of the FCC.

### 2. Jurisdiction

Just as this Court may use its mandamus power to require compliance with its mandates, it may also issue the writ to restrain an inferior court to proper exercises of that court's jurisdiction. *See Ex parte Republic of Peru,* 318 U.S. 578, 583, 63 S.Ct. 793, 796–97, 87 L.Ed. 1014 (1943). Our previous decision was founded on congressionally imposed limits on jurisdiction. As discussed below, those jurisdictional limitations apply here with equal force.

■ Exclusive jurisdiction to review the FCC's regulatory action lies in the courts of appeals. *See FCC v. ITT World Communications, Inc.,* 466 U.S. 463, 468, 104 S.Ct. 1936, 1939, 80 L.Ed.2d 480 (1984); *Telecommunications Research & Action Ctr. v. FCC,* 750 F.2d 70, 75 (D.C.Cir.1984) ("Exclusive jurisdiction over review of final FCC orders is vested in the Court of Appeals ...."); *see also NextWave* Appeal, 200 F.3d at 54 ("[J]urisdiction over claims brought against the FCC in its regulatory capacity lies exclusively in the federal courts of appeals, *see* 28 U.S.C. § 2342; 47 U.S.C. § 402...."). This exclusivity extends as well to collateral attacks: "A defensive attack on [an FCC decision] is as much an evasion of the exclusive jurisdiction of the Court of Appeals as is a preemptive strike by seeking an injunction." *United States v. Any & all Radio Station Transmission Equip.,* 207 F.3d 458, 463 (8th Cir.2000).

The jurisdictional statutes leave no opening for the sort of jurisdiction over

the FCC that the bankruptcy court seeks to exercise. Each statutory provision that governs appeals and petitions for review from FCC decisions is broadly phrased, as follows:

Jurisdiction over all but a few FCC regulatory actions is restricted to the courts of appeals:

*Any proceeding* to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and *in the manner prescribed in chapter 158 of Title 28.*

47 U.S.C. § 402(a) (emphasis added). The "manner prescribed in chapter 158 of Title 28" confines such petitions to the courts of appeals:

The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has *exclusive jurisdiction* to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—

(1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47. . . .

28 U.S.C. § 2342 (emphasis added).

■ Section 402(a) makes an exception for cases that fall under § 402(b), but again offers no opening to the bankruptcy

court. Cases that fall within § 402(b) are appealable only in the Court of Appeals for the District of Columbia Circuit:

Appeals may be taken from decisions and orders of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:

.   .   .   .   .

(5) By the holder of any construction permit or *station license* which has been modified or revoked by the Commission.

47 U.S.C. § 402(b)(5) (emphasis added). PCS licenses are "station licenses" within the technical meaning of § 402(b)(5), and fall within its ambit.[9]

■ Section 402(b) is applicable to all appeals from the FCC's licensing actions: "The language of this subsection [*i.e.*, § 402(b) ], when considered in relation to that of subsection (a), also would make it clear that judicial review of *all cases involving the exercise of the Commission's radio licensing power* is limited to [the Court of Appeals for the D.C. Circuit]." *Cook, Inc. v. United States,* 394 F.2d 84, 86 n. 4 (7th Cir.1968) (quoting S.Rep. No. 82–44, at 10 (1951)) (emphasis added; internal quotation marks omitted). NextWave remains free to pursue its challenge to the FCC's regulatory acts.[10] In response to

---

**9.** The statutory definitions clarify that the term "station license" means the "instrument of authorization required . . . for the use or operation of apparatus for transmission of energy, or communications, or signals by radio." 47 U.S.C. § 153(42) (Supp.1999). Transmission by radio is defined broadly to include all electromagnetic broadcast transmissions, not just those transmitting traditional broadcast-radio content. *See id.* § 153(33). The FCC has " 'unified jurisdiction' and 'regulatory power over all forms of electrical communication, whether by telephone, telegraph, cable, or radio.' " *United States v. Southwestern Cable Co.,* 392 U.S. 157, 168, 88 S.Ct. 1994, 2000, 20 L.Ed.2d 1001 (1968) (quoting S.Rep. No. 73–781, at 1 (1934)) (referring to 47 U.S.C. § 153(b), (cc) (1965), *recodified at* 47 U.S.C. § 153(33), (42) (Supp.1999)).

**10.** Section 402 specifies exclusive jurisdiction for appeals from FCC "decisions" and "orders." Here, the FCC has issued no order formally announcing the cancellation of the Licenses; revocation is made explicit in a filing before the bankruptcy court (which filing is not itself an order) and is implicit in the Public Notice announcing the re-auction of the Licenses previously held by NextWave. Nevertheless, as this Court's prior opinion makes clear, we think that the FCC action in question is unmistakably regulatory in nature. But even if the FCC's acts do not amount to "decisions" or "orders" of the Commission, subject to the jurisdiction of the courts of appeals, that would not expose the FCC's acts to review in the bankruptcy court. A regulatory action short of a decision or order is an exercise of regulatory discretion that is *not* subject to review. *See Bethesda–Chevy Chase*

the FCC's revocation of the Licenses, NextWave has filed protective notices of appeal in the D.C. Circuit, one under § 402(a) and the other under § 402(b). Cases within § 402(a) and cases within § 402(b) are "mutually exclusive." *Freeman Eng'g Assocs. v. FCC*, 103 F.3d 169, 177 (D.C.Cir.1997) (citation and internal quotation marks omitted). But as noted in those notices of appeal, NextWave expects that the D.C. Circuit will simply dismiss whichever appeal is improper. *See, e.g., Tribune Co. v. FCC*, 133 F.3d 61, 66 n. 4 (D.C.Cir.1998); *Kessler v. FCC*, 326 F.2d 673, 679 n. 4 (D.C.Cir.1963).

## CONCLUSION

We conclude that the bankruptcy court acted in derogation of this Court's mandate and beyond its statutory jurisdiction when it nullified the FCC's Public Notice. The violation of our mandate and the jurisdictional defect are independently sufficient to justify mandamus.

Accordingly, the petition for a writ of mandamus is GRANTED. The bankruptcy court is directed to vacate its order of February 7, 2000, and to enter an order denying NextWave's motion for enforcement of the automatic stay with respect to the Licenses.

---

*Broadcasters, Inc. v. FCC*, 385 F.2d 967, 968 (D.C.Cir.1967) (holding that a regulatory action that did not impose an obligation, deny a right, or fix a legal relationship was not reviewable); *see also, e.g., Telecommunications Research & Action Ctr.*, 750 F.2d at 78–79 ("[W]here a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals." (emphasis added)); *Illinois Citizens Comm. for Broadcasting v. FCC*, 515 F.2d 397, 402 (D.C.Cir. 1974) ("[T]o be final an order must impose an obligation, deny a right or fix some legal relationship . . . ." (citation and internal quotation marks omitted)).

In this case, we have no doubt that the Public Notice of the Auction of C and F Block Broadband PCS Licenses is an appealable decision or order of the FCC. *See, e.g., Mountain Solutions, Ltd. v. FCC*, 197 F.3d 512, 520 n. 12 (D.C.Cir.1999) (treating denial of a waiver as an "adjudicatory decision"); *Fidelity Television, Inc. v. FCC*, 502 F.2d 443, 452 (D.C.Cir.1974); *cf. Mesa Airlines v. United States*, 951 F.2d 1186, 1188 (10th Cir.1991); *California Assoc. of the Physically Handicapped, Inc. v. FCC*, 833 F.2d 1333, 1334 (9th Cir.1987).

The FCC's Notice announced that specified licenses—those formerly possessed by NextWave—were to be re-auctioned. It is easy to conclude that this "den[ies] a right." *Illinois Citizens Comm.*, 515 F.2d at 402. And if that decision is appealable, its regulatory nature requires that it be appealed in the court of appeals.