**In Re: Lawrence KASSOVER, Debtor.**

**R. Peyton Gibson, Liquidating Trustee of the Estate of Lawrence Kassover, Plaintiff–Appellee,**

v.

**Philip Kassover, Defendant–Appellant.**

**Docket No. 02–5009.**

United States Court of Appeals, Second Circuit.

Argued: April 8, 2002.

Decided: Sept. 5, 2003.

preliminary injunction issued by the bankruptcy court for the Southern District of New York. *See Gibson v. Kassover (In re Kassover)*, No. 01–CV–11769, 2002 WL 100640, at *2 (S.D.N.Y. Jan.24, 2002); *see also* 28 U.S.C. § 158(a)(3). Appellant argues that: (i) we have appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(1)[2] to review the district court's decision; (ii) the preliminary injunction entered by the bankruptcy court should be vacated; and (iii) the district court abused its discretion in denying him leave to appeal. We hold that 28 U.S.C. § 1292(a)(1) does not vest us with jurisdiction to review a district court's exercise of discretion in denying leave to appeal an interlocutory order of a bankruptcy court, including injunctions, under 28 U.S.C. § 158(a)(3). We therefore dismiss the appeal.

Michael L. Cook, Schulte Roth & Zabel LLP, (Marc E. Elovitz and David M. Hillman, on the brief), New York, New York, for Defendant–Appellant.

Claude D. Montgomery, Salans Hertzfeld Heilbronn Christy & Viener (Linda C. Jamieson, on the brief), New York, New York, for Plaintiff–Appellee.

Before: WINTER, POOLER, and B.D. PARKER, JR., Circuit Judges.

WINTER, Circuit Judge.

Philip Kassover appeals from Judge Baer's refusal under 28 U.S.C. § 158(a)(3)[1] to grant him leave to appeal a

## BACKGROUND

This appeal arises from a bankruptcy proceeding in which Lawrence Kassover, appellant's cousin, is the debtor. When Lawrence filed for bankruptcy, he owned 813 shares, or approximately 6 percent, of the outstanding stock of The Garden City Company, Inc. ("Garden City"), a real-estate holding and management company owned largely or entirely by members of the Kassover family. Appellant owned 363 shares, or approximately 2.5 percent, of Garden City's stock and was an officer and director of the company. According to appellant, he controlled an additional 2,728 shares of Garden City's stock, bringing his

---

1. Title 28 U.S.C. § 158 reads in pertinent part:

> (a) The district courts ... shall have jurisdiction to hear appeals

>   *   *   *   *   *   *

> (3) with leave of the [district] court, from ... interlocutory orders [of the bankruptcy court] ....

2. Title 28 U.S.C. § 1292(a) reads in pertinent part:

> (a) [T]he courts of appeals shall have jurisdiction of appeals from:
> > (1) Interlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions ....

ownership share of the company to 21.52 percent.

Garden City had neither a chief executive officer nor formal job titles for any of its officers, and, notwithstanding appellant's less-than-majority shareholdings in Garden City, he apparently exercised operational control of the company's day-to-day operations. Appellant's authority was so complete that he has been mistaken in the past as Garden City's sole owner.

Upon Lawrence Kassover's filing for bankruptcy, the bankruptcy court appointed R. Peyton Gibson to serve as the liquidating trustee ("Trustee") of the debtor's estate. Thereafter, the Trustee filed a proposed Plan of Reorganization ("Plan") calling for, among other things, the sale of Lawrence Kassover's interest in Garden City through a possible dissolution of the company. When this proposal was disclosed to Garden City's other shareholders, it raised a concern that the Plan might create unnecessary tax liability for either themselves or Garden City. This concern prompted the directors of Garden City to seek, along with the Trustee, a tax-advantaged disposition of the company.

To that end, the Trustee filed an amended Plan reflecting an anticipated consensual sale of Garden City, and this revised proposal was approved by Garden City's directors by a three-to-one vote, with only appellant dissenting. In the bankruptcy court, appellant formally objected to confirmation of the Trustee's Plan but withdrew his objections after reserving the right to mount a later challenge to any sale or merger of Garden City or revision of the company's shareholders' agreement. The bankruptcy court confirmed the amended Plan, and, in so doing, expressly authorized the Trustee to seek a sale or similar disposition of Garden City. Appellant did not object to the Confirmation Order.

After the Plan became effective, the Trustee began to work toward the goal of selling Garden City in a tax-advantaged transaction, and hired the real estate brokerage firm of Insignia/ESG, Inc. ("Insignia") to market the company. While seeking due diligence information to be used in its efforts to market Garden City, Insignia encountered substantial resistence in obtaining the company's documents. Appellant, exercising his *de facto* authority over Garden City, was responsible for frustrating the document production. Appellant acted in other ways to impede the Trustee in selling Garden City. In particular, he blocked Insignia from physically viewing Garden City's properties, prevented an engineering consulting firm hired by the Trustee from updating Garden City's engineering and environmental reports, and interfered with visits to Garden City's properties by prospective buyers. Appellant also scared off at least one interested bidder with warnings of potential litigation relating to the company's disposition and made false public assertions that Garden City was not for sale.

As a result of appellant's obstructive tactics, Insignia was delayed in pursuing a sale of Garden City. During the delay, the real estate market went into recession and the terrorist attacks of September 11, 2001, created serious uncertainties, all of which resulted in a decline in Garden City's value. The Trustee then filed a motion with the bankruptcy court seeking to enjoin appellant's interference with the sale of Garden City. The bankruptcy court conducted an evidentiary hearing and concluded that injunctive relief was appropriate. The court entered an injunction prohibiting appellant from obstructing the Trustee's attempts to sell Garden City. More specifically, it barred him from refusing the Trustee access to any of Garden City's properties and documents and from

retaliating against Garden City's employees for their cooperation with the Trustee. Additionally, appellant was enjoined not to "instruct, direct or otherwise coerce any Garden City employee or agent" to hinder the Trustee's sale of Garden City. However, nothing in the injunction precluded appellant from expressing his views freely or voting according to his conscience at any meeting of the Garden City Board of Directors.

Appellant sought leave from the district court under Section 153(a)(3) to appeal the bankruptcy court's injunction, but the district court exercised its discretion to deny such leave. *See Kassover*, 2002 WL 100640, at *2. This appeal followed.

### DISCUSSION

■ We cannot reach the merits without determining that we have appellate jurisdiction. *See Locurto v. Safir*, 264 F.3d 154, 162 (2d Cir.2001). Under Section 158(a)(3), a district court has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court. *See* Note 1, *supra*. However, there is no jurisdictional provision authorizing a court of appeals to hear an appeal from a district court's decision regarding a bankruptcy court's interlocutory order, whether it denies leave to appeal or renders a decision on the merits. *See LTV Steel Co. v. United Mine Workers of Am. (In re Chateaugay )*, 922 F.2d 86, 89–90 (2d Cir.1990); *see also Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 618–19 n. 4 (2d Cir.1999); *Sonnax Indus., Inc. v. Tri Component Prods Corp. (In re Sonnax*

*Indus.)*, 907 F.2d 1280, 1283 n. 1 (2d Cir. 1990).

Appellant argues that, although we may lack jurisdiction under Section 158, we must nonetheless review the bankruptcy court's order under 28 U.S.C. § 1292(a)(1), *see* Note 2, *supra*, because the district court's decision effectively constituted a refusal to dissolve the injunction. There is support for this theory. In *Germain v. Connecticut National Bank*, 926 F.2d 191 (2d Cir.1991), we held that 28 U.S.C. § 1292(b)[3] did not authorize us to hear an interlocutory appeal when a district court certified a controlling question of law to this court after a decision on the merits rendered pursuant to 28 U.S.C. § 158(a)(3). *Germain*, 926 F.2d at 194–97. The Supreme Court reversed, stating broadly that Section 1292 provided courts of appeals with jurisdiction to hear appeals from district court decisions on the merits under Section 158(a)(3). *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 251–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

This case, however, is not controlled by *Germain*. The question here is whether jurisdiction exists in a court of appeals under Section 1292(a)(1) where a district court, acting under Section 158(a)(3), has declined to hear the merits of an appeal from the granting of an injunction. In contrast, *Germain* addressed a situation where the district court did render a decision on the merits under Section 158(a)(3) and thereafter triggered appellate review through a certified question. *Germain*,

---

**3.** Title 28 U.S.C. § 1292(b) reads in pertinent part:

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion

and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order .....

503 U.S. at 250, 112 S.Ct. 1146; 926 F.2d at 192.

We hold that we lack jurisdiction over the appeal. We note first an ambiguity in, or literal inapplicability of, the language of Section 1292(a)(1). The district court's decision did not formally grant, continue, modify, refuse, dissolve, or refuse to dissolve or modify an injunction. *See* Note 2. It did not, in short, perform any of the acts listed in Section 1292(a)(1). It simply declined leave to appeal.

To be sure, where the action of a district court has the "practical effect" of granting or denying an injunction, there may be appellate jurisdiction under Section 1292(a)(1). *See Carson v. Am. Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981) (Appellate jurisdiction exists over interlocutory orders with the "practical effect" of injunctive action or inaction that might have a "serious, perhaps irreparable, consequence" and can be "effectually challenged" only by immediate appeal.) (citation omitted); *Zervos v. Verizon N.Y., Inc.,* 277 F.3d 635, 645 (2d Cir. 2002) (same); *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.,* 277 F.3d 253, 258 n. 2 (2d Cir.2002) (same); *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council,* 839 F.2d 69, 73 (2d Cir.), *vacated and rev'd in part on other grounds,* 857 F.2d 55, 75–76 (2d Cir.1988) (same). However, in those cases, the district courts had statutory obligations to entertain the merits posed by the claims for relief, and ambiguities as to the character of the district court's rulings could be usefully resolved by a "practical effect" rule. In the present case, Congress has expressly vested discretion in district courts to decline to hear the appeal. In short, under Section 158(a)(3), if a district court denies leave to appeal, there is no ambiguity to cure. It has lawfully declined to hear the merits. Moreover, the

application of the "practical effect" rule would lead to anomalous results.

The vesting in a district court of discretionary appellate jurisdiction over an order by a bankruptcy court is not consistent with mandatory appellate jurisdiction in a court of appeals over a district court's declining to review the bankruptcy court order. In requiring that a district court grant leave to appeal before rendering a decision on the merits, Congress surely intended to make the declining of such leave the end of the matter, save perhaps for the seeking of an extraordinary writ. Any other view of the statutory scheme would not only allow a district court to deem an issue to be unworthy of review on the merits while rendering subsequent review mandatory but would also require appellate review in this court without the benefit of a district court's findings of fact and conclusions of law. We do not believe that Congress intended to enact a scheme with an often superfluous intermediate appeal that would be so wasteful of the resources of courts and private parties.

These observations are particularly pertinent with regard to interlocutory appeals involving the granting or denying of injunctive relief. Decisions with regard to such relief are at the core of district court work. There is no reason to believe that Congress deemed the views of district judges on the granting or denying of injunctive relief by bankruptcy courts to be so inconsequential as to make their expression optional before court of appeals review.

Moreover, Section 1292(a)(1) embodies an exception to the final judgment rule for injunctive relief because the passage of time may render the need for such relief, or for the lifting of such relief, moot. If courts of appeals have mandatory jurisdiction in cases such as the present one, the interposition of discretionary review in dis-

trict courts is inexplicable because it will cause a substantial delay in obtaining a decision on the merits in a large number of cases. If time is of the essence, requiring litigants who seek mandatory appellate review to first seek appellate relief from a court that may not only deny relief but may also deny leave to appeal makes no sense. The reasons underlying the provision for appellate review under Section 1292(a)(1), therefore, do not apply to denials of leave to appeal under Section 158(a)(3).

In reaching this conclusion, we note that our analysis does not apply to an order of a district court first granting leave to appeal a grant or denial of injunctive relief by the bankruptcy court and then ruling on the merits. Such a decision would fall within the language of Section 1292(a)(1). Moreover, a district court's denial of leave to appeal an interlocutory order of a bankruptcy court, including an order granting or denying an injunction, may still be subject to a petition for a writ of mandamus. *See Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 652 (2d Cir.1987) (treating appeal as request for leave to file petition for mandamus and stating that " 'mandamus is an extraordinary remedy' " which should not issue unless "necessary 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' ") (internal citations omitted); *Dubruyne v. Nat'l Semiconductor Corp. (In re Repetitive Stress Injury Litig.),* 35 F.3d 637, 639–40 (2d Cir.1994) (circuit court can treat appeal as petition for writ of mandamus or motion for leave to file such petition). *See also In re Fed. Communications Comm'n,* 217 F.3d 125, 133, 141 (2d Cir.2000) (writ of mandamus issued to bankruptcy court). The facts here give us absolutely no reason to consider treating the present appeal as such a petition. *See id.*

We therefore dismiss this appeal for lack of jurisdiction.