**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2006

(Argued: April 10, 2007)                                        Decided: May 8, 2007)

Docket No. 07-1190-cv

IN RE: AIR CRASH AT BELLE HARBOR, NEW YORK ON NOVEMBER 12, 2001

MARGARITA DEL CARMEN MONTAN, individually, as personal representative and administrator of the Estate of Jose Angel Rosa and on behalf of all heirs and next of kin of Jose Angel Rosa, deceased and JESUS R. ARAUJUO, as personal representative and administrator of the Estate of Lillian Valoy, deceased, individually and on behalf of the next of kin,

*Plaintiffs,*

JEFFREY W. GOLAN,

*Non-Party-Appellant,*

v.

AMERICAN AIRLINES, INC., AIRBUS INDUSTRIE, G.I.E., A AIRBUS S.A.S., AIRBUS SERVICE COMPANY, INC., EUROPEAN AERONAUTIC DEFENSE AND SPACE COMPANY EA, BAE SYSTEMS,

*Defendants-Appellees.*

Before: LEVAL, CABRANES, and RAGGI, *Circuit Judges.*

Non-party-appellant, a licensed attorney, appeals from an order compelling him to produce certain documents and appear for a deposition in compliance with a subpoena, despite his assertions of attorney-client privilege, the work product doctrine, and protections under the reporters' shield laws of New York and Germany. We conclude that (1) the order is not final for the purposes of 28 U.S.C. § 1291, because appellant has not disobeyed the order and been held in contempt; (2) the District Court did not have authority under Federal Rule of Civil Procedure 54(b) to designate the order as "final"; and (3) the collateral order doctrine does not apply. Therefore, we lack appellate jurisdiction and grant

1

defendant-appellee's motion to dismiss the appeal.

JEFFREY W. GOLAN, *pro se*.

IRA M. FEINBERG, Hogan & Hartson L.L.P., New York, NY
(George F. Hritz, Hogan & Hartson L.L.P., New York,
NY; Thad T. Dameris, Trevor R. Jeffries, and Bruce D.
Oakley, Hogan & Hartson L.L.P., Houston TX; and
David J. Weiner, Hogan & Hartson L.L.P., Washington,
DC, *on the brief*), *for Defendant-Appellee Airbus Industrie
G.I.E.*

JOSÉ A. CABRANES, *Circuit Judge*:

We consider here whether we may exercise appellate jurisdiction over a non-party lawyer's

appeal from a district court order directing him to produce documents and appear for a deposition,

despite his assertions of various privileges belonging to himself and his client, where the lawyer has not

disobeyed the order and been held in contempt.

The appeal arises out of lawsuits filed against, *inter alia*, defendant-appellee Airbus Industrie

G.I.E. ("Airbus") following the crash of American Airlines Flight 587 at Belle Harbor, New York, on

November 12, 2001. During consolidated pretrial proceedings, the United States District Court for the

Southern District of New York (Robert W. Sweet, *Judge*) granted Airbus's motion to compel non-party-

appellant Jeffrey W. Golan ("Golan"), a lawyer licensed in Pennsylvania, to produce certain documents

and appear for a deposition in compliance with a subpoena, over his objections based on attorney-

client privilege, the work product doctrine, and the reporters' shield laws of New York and Germany.

Golan asserts that he represents a German reporter, who is not a party to these proceedings, and that

he serves as a consultant for plaintiffs' counsel in the underlying litigation. The District Court

subsequently designated the order as a "final order" and directed its immediate entry pursuant to

Federal Rule of Civil Procedure 54(b) ("Rule 54(b)").[1] Golan appealed, and Airbus moved to dismiss

---

[1] As discussed below, Rule 54(b) permits a district court, upon a finding of "no just reason for delay," to direct entry of a final judgment as to "fewer than all claims or parties."

the appeal for lack of appellate jurisdiction because the order was not a "final decision" under 28 U.S.C. § 1291.[2]  Golan responded that (1) under a line of cases deriving from the Supreme Court's opinion in *Perlman v. United States*, 247 U.S. 7 (1918), he was exempt from the general rule requiring a subpoenaed non-party in a criminal or civil proceeding to "disobey the subpoena, be held in civil or criminal contempt, and then appeal the contempt order," *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 574 (2d Cir. 2005); (2) the District Court's invocation of Rule 54(b) rendered the order a final decision for the purposes of 28 U.S.C. § 1291; and (3) in any event, we should accept his appeal pursuant to the collateral order doctrine.  By order dated April 17, 2007, we summarily granted Airbus's motion to dismiss the appeal.  We write now to explain our reasons for doing so.

## BACKGROUND

On April 24, 2002, the Judicial Panel on Multidistrict Litigation transferred all lawsuits concerning the November 12, 2001 crash to the Southern District of New York pursuant to 28 U.S.C. § 1407.  The transferred cases were assigned to Judge Sweet for consolidated pretrial proceedings with related actions already before him.  He subsequently appointed a Plaintiffs' Executive Committee ("PEC") to coordinate the work of plaintiffs' counsel.  Plaintiffs in the underlying litigation seek relief under various theories, including wrongful death, products liability, and breach of warranty.

On October 13, 2005, Airbus served the PEC with a document request for any material in its possession obtained from current and former Airbus employees.  On March 9, 2006, the PEC provided Airbus with a privilege log identifying three memoranda written and transmitted to the PEC by Golan. On November 3, 2006, Airbus served Golan with a subpoena issued and signed by Airbus's counsel on behalf of the District Court.[3]  The subpoena commanded Golan to appear for a deposition and to

---

[2] In pertinent part, 28 U.S.C. § 1291 provides: "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."

[3] The issuance of a subpoena in a civil action does not in itself reflect the District Court's endorsement of the demands made therein.  *See* Fed. R. Civ. P. 45(a) (describing the procedure for issuance of a subpoena); *see also* 9A Wright

3

produce thirteen categories of documents, including all documents received from any current and former Airbus employees, all documents concerning the November 12, 2001 crash and certain Airbus aircraft, and all documents provided to any other person regarding the litigation. Golan served objections to the subpoena on November 21, 2006, and amended objections on November 30, 2006.

Golan's amended objections to the subpoena consisted of six "General Objections," a discussion of the basis for the general objections, statements in response to each category of documents requested by Airbus, and broad descriptions of the documents being withheld. Golan asserted that the subpoena (1) called for the production of materials protected by the attorney-client privilege; (2) called for the production of materials protected by the attorney work product doctrine; (3) was overly broad, unduly burdensome, and harassing; (4) sought information protected by reporters' shield laws in the United States and Europe; (5) attempted to "end-run the plaintiffs' [March 9, 2006] designation of privileged documents"; and (6) required him to appear for a deposition on a day when he had other professional commitments. Golan explained that he became aware of information relevant to the litigation as a result of serving as counsel for a European journalist, and that any information Golan shared with the PEC was done (1) in anticipation of potential litigation the journalist might bring, (2) to aid the journalist "in the pursuit of an eventual investigative publication," or (3) to assist the PEC.

On January 30, 2007, Airbus filed a motion to compel Golan to produce the documents and appear for the deposition. Both Golan and the PEC opposed the motion. In a declaration filed in support of his opposition to the motion, Golan specified that several months after the November 12, 2001 crash, he was contacted by a reporter at a well-established German publication who was seeking legal counsel regarding, *inter alia*, whether a person not injured in the crash could bring a private action in the United States and how to obtain information disclosed in the course of litigation that had already

& Miller, Federal Practice & Procedure § 2451 (1995) ("A 'subpoena' is a mandate lawfully issued in the name of the court, usually by the clerk thereof, but under current practice, by attorneys.").

commenced. Golan stated that he continued to serve as the reporter's attorney after the reporter decided not to initiate any litigation; Golan also claimed that he entered into a consulting relationship with the PEC "for the purpose of investigating and communicating information pertinent to the crash." In sum, Golan claimed that "all of the information and documents that [he possesses] have come into [his] possession solely as a result of [his] providing legal advice to [his] client, the reporter, and later, as a consultant to Plaintiffs' counsel." Purporting to assert a "good faith and sufficient basis for protecting from production . . . all documents in [his] possession and all information that [he] may have learned relevant to this matter," Golan invoked the attorney-client privilege, the attorney work product doctrine, and the reporters' shield laws of New York and Germany.

The District Court issued a memorandum opinion on March 1, 2007, granting Airbus's motion to compel. *In re: Air Crash at Belle Harbor, New York on November 12, 2001*, Nos. 02 Civ. 0439 (RWS), 02 MDL 1448 (RWS), 2007 WL 635723 (S.D.N.Y. Mar. 1, 2007). The District Court concluded that (1) Golan failed to establish the existence of an attorney-client relationship with either the unnamed German reporter or the PEC; (2) even if Golan could prove an attorney-client relationship, the reporter waived the attorney-client privilege with respect to any material that had been shared with the PEC, and the PEC waived the attorney-client privilege with respect to any material that had been shared with other persons; (3) under an earlier discovery decision of the District Court, the work product doctrine was inapplicable to any materials admitted to contain Airbus documents or information; (4) in any event, Golan waived application of the work product doctrine by failing to submit a privilege log in accordance with the requirements of S.D.N.Y. Local Rule 26.2;[4] (5) Golan failed to engage in any choice-of-law analysis that would lead to the application of Germany's shield law and did not present

---

[4] Pursuant to Local Rule 26.2, "[w]here a claim of privilege is asserted in objecting to any means of discovery or disclosure . . . the attorney asserting the privilege shall identity the nature of the privilege," and provide information such as the type, subject matter, and date of allegedly privileged documents and the date, subject matter, and recipients of allegedly privileged communications.

5

evidence of any connection between the reporter and Germany; and (6) the protections afforded by New York's shield law do not apply to any information that the reporter shared with Golan. *See id.* at *1-2.

On March 8, 2007, the District Court entered an order directing Golan to appear for the deposition on or before March 12 and to produce all documents responsive to Airbus's subpoena on or before March 9. The March 8 order also directed plaintiffs to produce related documents. On March 9, 2007, Golan filed a notice of appeal from the March 8 order. Also on March 9, 2007, in response to a request from Golan, the District Court issued a further order in which it designated "the portions of the March 8 Order pertaining to Golan" as a "Final Order with respect to Golan." The District Court found no just reason for delay in the entry of the "Final Order" and directed its immediate entry pursuant to Rule 54(b). Golan filed an amended notice of appeal on March 14, 2007, which indicated that the March 8 order had been entered as a final order under Rule 54(b) pursuant to the District Court's instructions.

At oral argument before this Court, Golan informed us that if his appeal were to prove unsuccessful, he would abide by the District Court's order compelling compliance with the subpoena, and that he has received his reporter client's authorization to do so in that event.

**DISCUSSION**

This Court "shall have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. "Under traditional finality principles, a district court's decision to compel compliance with a subpoena or to deny a motion to quash a subpoena is generally not a 'final decision' and therefore is not immediately appealable." *Stolt-Nielsen SA*, 430 F.3d at 574. This general rule applies whether the subpoena is issued in connection with civil and criminal actions, or grand jury proceedings, *see United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 468 (2d Cir. 1996), and whether the person (or entity) seeking to prevent enforcement of the subpoena is a party to the litigation or a

non-party witness, *see Stolt-Nielsen SA*, 430 F.3d at 574. To obtain appellate review, the subpoenaed person ordinarily "must defy the district court's enforcement order, be held in contempt, and then appeal the contempt order, which is regarded as final under § 1291." *Constr. Prods. Research, Inc.*, 73 F.3d at 469; *see also United States v. Nixon*, 418 U.S. 683, 690-91 (1974); *Alexander v. United States*, 201 U.S. 117, 121-22 (1906); *Stolt-Nielsen SA*, 430 F.3d at 574; *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 17 (2d Cir. 1992); *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 591 F.2d 174, 177 (2d Cir. 1979) (Friendly, J.). Under this rule, "[t]he remedy of the party witness wishing to appeal is to refuse to answer and subject himself to criminal contempt; that of the non-party witness is to refuse to answer and subject himself to civil or criminal contempt."[5] *Nat'l Super Spuds, Inc.*, 591 F.2d at 177.

Requiring the subject of a subpoena to submit to contempt before appealing promotes the "strong congressional policy"—embodied in 28 U.S.C. § 1291—"against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." *Nixon*, 418 U.S. at 690. As Judge Friendly has explained, even the "softened" application of this requirement "serves a useful purpose in curtailing appeals, with consequent delay in litigation . . . ."[6] *Nat'l Super Spuds, Inc.*, 591 F.2d at 180. "Both sides benefit from having a second look." *Id.* The subpoenaed person "may decide . . . that the importance of the issue and the risk of adverse appellate determination do not

---

[5] It is arguably possible that a party witness could obtain review of the rulings underlying a challenged discovery order by allowing his case to be dismissed for non-production (if the party witness is a plaintiff) or by allowing summary judgment to be entered based on adverse inferences drawn from non-production (if the party witness is a defendant). We are not presented with such a scenario, and we express no opinion as to the feasibility of these courses of action.

[6] The "softened" application referred to by Judge Friendly involved the assertion of governmental privilege by a non-party Government employee at his agency's request. *Nat'l Super Spuds, Inc.*, 591 F.2d at 180. In such a case, a "citation for civil contempt without any other immediate sanction pending prompt application for review will ordinarily suffice." *Id.* If the appeal were unsuccessful, "damages (in a case like this primarily counsel fees) would be an appropriate remedy, and these should be paid by the Government and not by the employee." *Id.* (citations omitted).

We need not consider here whether it would be permissible, much less sufficient, for a district court to apply an "softer" approach than was discussed by Judge Friendly, such as by holding a putative appellant in contempt with the explicit or implicit understanding that the citation would be expunged even if the appeal were unsuccessful and the contemnor then promptly complied.

warrant being branded as a contemnor," while "the person seeking information . . . may decide that the quest is not important enough to seek a contempt citation, thereby entailing the delay of an appeal . . . ." *Id.*

"The requirement of submitting to contempt, however, is not without exception and in some instances the purposes underlying the finality rule require a different result." *Nixon*, 418 U.S. at 691. Thus, for example, "a district court order enforcing a subpoena issued by a government agency in connection with an administrative investigation may be appealed immediately without first performing the ritual of obtaining a contempt order," because the administrative proceeding is self-contained and, unlike in the case of a grand jury or trial, there is no "further judicial inquiry which would be halted were the offending [subpoenaed party] permitted to appeal." *Constr. Prods. Research, Inc.*, 73 F.3d at 469 (alteration in original) (quoting *Cobbledick v. United States*, 309 U.S. 323, 330 (1940)) (internal quotation mark omitted).

## I.  The *Perlman* Exception

Golan argues that his appeal falls under the so-called *Perlman* exception to the rule requiring the subject of a subpoena to submit to contempt before a district court's order compelling compliance with the subpoena is appealable.  In *Perlman v. United States*, 247 U.S. 7 (1918), the Supreme Court permitted Perlman, the target of a grand jury investigation, to immediately appeal the district court's denial of his motion for an order restraining the United States Attorney from using property belonging to him that had been impounded and deposited with the clerk of the court, after the clerk had been ordered by the district court to produce the property.  *See id.* at 12-13; *Nat'l Super Spuds, Inc.*, 591 F.2d at 178 (discussing *Perlman*'s facts and procedural history).  Thus, in *Perlman*, "the contempt avenue for ultimately securing review" of the district court's production order "was not available since Perlman was not being required to do anything," *Nat'l Super Spuds, Inc.*, 591 F.2d at 179 (citing *Cobbledick*, 309 U.S. at 328-29).  Moreover, it was "unimaginable" that the disinterested clerk would defy the district

court's order so that Perlman—who had no connection to the clerk—could appeal. *Id.*

*Perlman* has since come to stand for the principle that the holder of an asserted privilege may immediately appeal the enforcement of a subpoena when the subpoena is directed at another person who does not object to providing the testimony or documents at issue. *See Stolt-Nielsen SA*, 430 F.3d at 575 ("[W]here a subpoenaed third-party witness does not object to testifying, but someone else does—often on the grounds of privilege—a district court's refusal to quash the subpoena is immediately appealable by the objecting party."); *In re Katz*, 623 F.2d 122, 124 (2d Cir. 1980) ("[W]here the subpoena is directed against a third party, the movant who claims that production of the subpoened material would violate his fifth amendment privilege against self-incrimination is permitted an immediate appeal."); *see also In re Grand Jury Proceedings*, 219 F.3d 175, 182 n.3 (2d Cir. 2000) (interpreting *In re Katz* as concluding that the "holder of [an] asserted privilege may appeal when [a] subpoena is directed at a third party because of the risk that the third party will surrender the privilege rather than risk a contempt citation"). The *Perlman* exception applies to appeals both from orders denying motions to quash, *see, e.g.*, *In re Katz*, 623 F.2d at 124, and orders granting motions to compel, *see, e.g.*, *In re Grand Jury Proceedings*, 219 F.3d at 181-82 & n.3. It also applies to appeals from orders issued in both grand jury proceedings, *see, e.g.*, *In re Katz*, 623 F.2d at 123-24, and criminal and civil actions, *see Nat'l Super Spuds, Inc.*, 591 F.2d at 176-81.

Golan contends that, like the clerk in *Perlman*, it is unimaginable that he would defy the District Court's order to assert privileges belonging to his reporter client. Golan claims that because he is a licensed attorney who often appears on a *pro hac vice* basis in the Southern District of New York, it would be "virtually impossible" for him to risk a citation for contempt. Although Golan does not explain the basis for this impossibility in his submissions to this Court, at oral argument he implied that a mere citation for contempt would have adverse professional consequences, primarily affecting his appointment to plaintiffs' executive committees in other complex litigation.

Golan's argument fails, and the *Perlman* exception is inapplicable to his appeal, for two reasons. First, the *Perlman* exception is relevant only to appeals brought by the holder of a privilege where the disputed subpoena is directed at *someone else.* It is impossible for such an appellant to pursue the normal avenue of review—submission to contempt—because, like Perlman, that appellant has not been required to do anything by the district court. In the instant case, however, Golan is both the appellant and the subject of the subpoena. The power to abide by or defy the district court's order is in his hands alone. *See In re Am. Tobacco Co.*, 866 F.2d 552, 556 (2d Cir. 1989) ("*Perlman* may not be extended to permit the party in possession of the subpoenaed documents to appeal prior to contempt simply because other persons might have been able to do so."); *cf. In re Grand Jury Subpoena for N.Y. State Income Tax Records*, 607 F.2d 566, 571 (2d Cir. 1979) ("Since the State is both the holder of the privilege and the custodian of the records the *Perlman* doctrine does not permit this appeal.").

Second, unlike the court clerk in *Perlman*, a lawyer in Golan's position—even one concerned about the effects of a contempt citation on his practice—does not lack countervailing motivations to submit to contempt, as well as ethical obligations to assert his client's privileges. As the United States Court of Appeals for the District of Columbia Circuit has noted in a similar situation, a lawyer who "assert[s] [his] own interests in work product and in not being subject to what [he] claims is burdensome and abusive discovery, plus the privilege of [his] client (which [he] is normally duty-bound to assert) . . . has the requisite incentives (as well as the clear ability) to risk contempt and thereby force review into the usual channel." *In re Sealed Case*, 141 F.3d 337, 340 (D.C. Cir. 1998) (citations omitted). Moreover, if a mere citation for civil contempt might hinder an attorney's attempts at obtaining representation in future cases, the refusal to submit to such contempt under any circumstances might drive away clients in the future.[7]

---

[7] At oral argument, Golan suggested that we should allow his appeal to proceed because his reporter client is not a party to the underlying litigation and therefore cannot bring the appeal on the client's own behalf. However, in *In re Katz*, we permitted the client of a non-party attorney to appeal under the *Perlman* exception after moving to intervene

Because Golan cannot take advantage of the *Perlman* exception to obtain review of the District Court's order, the ordinary contempt requirement would prevent immediate appeal unless we were to create a new exception for lawyers that is similar to the exception established for the President of the United States by the Supreme Court in *Nixon v. United States.* In that case, the Supreme Court held that the President, who had been issued a subpoena to produce certain tapes and documents in connection with a criminal proceeding where he was named as an unindicted co-conspirator, could immediately appeal the district court's denial of his motion to quash the subpoena, even though he had not first submitted to contempt. *Nixon*, 418 U.S. at 686, 691-92. The Court emphasized that the ordinary rule was "peculiarly inappropriate due to the unique setting" in which the issue arose. *Id.* at 691. Requiring the President to submit to contempt would have "present[ed] an unnecessary occasion for constitutional confrontation between two branches of the Government," placed the federal judge in an unusually difficult position, and threatened to "itself engender protracted litigation" over whether the district court had the power to hold the President in contempt, thereby delaying review "on the merits

as of right before the district court pursuant to Federal Rule of Civil Procedure 24(a). *See In re Katz*, 623 F.2d at 123-25. Moreover, an order compelling discovery does not become final under 28 U.S.C. § 1291 merely because the privilege holder cannot appeal and the target of the order has not submitted to contempt. For instance, such an order may not be final if the target is an employee of the privilege holder and appears willing to submit to contempt rather than comply with the order. *See Nat'l Super Spuds, Inc.*, 591 F.2d at 179-81 (dismissing an appeal from a district court order directing the employee of a government agency to answer certain questions at a deposition, where the employee had not submitted to contempt and the *Perlman* exception did not permit the agency itself to appeal).

We need not consider whether the *Perlman* exception would allow Golan's client to appeal in a situation where, as here, the attorney has resisted the subpoena and the client has authorized the attorney to obey an order compelling compliance in the event of an unsuccessful appeal by the attorney himself. *See id.* at 179 n.7 ("Whatever the validity of this exception may be in cases where the [privilege holder] is disinterested or independent, it becomes more difficult to sustain where the target of the disclosure order is both subject to the control of the person or entity asserting the privilege and is a participant in the relationship out of which the privilege emerges." (citations omitted)); *cf. Stolt-Nielsen, SA*, 430 F.3d at 475 (applying the *Perlman* exception where the subject of the subpoena "demonstrated that he is more than willing to comply with the subpoena without any additional prompting"); *In re Sealed Case*, 141 F.3d at 340 n.1 ("In some cases the attorney will indicate an intention to comply with the subpoena, and on those facts the [D.C. Circuit] regards *Perlman* as controlling."); *In re Katz*, 623 F.2d at 124-25 (applying the *Perlman* exception where the attorney's client asserted his "fifth amendment privilege against self-incrimination" and the attorney had already appeared before the grand jury and given the allegedly privileged documents to the district court under seal).

Golan also asked at oral argument that, if we conclude he is unable to appeal, we grant leave to have his reporter client substituted on the notice of appeal. We decline to depart from the ordinary rules for intervention and perfection of an appeal from an order compelling compliance with a subpoena.

of his claim of privilege and the ultimate termination of the underlying criminal action for which his evidence [was] sought." *Id.* at 692.

Such concerns have no bearing on the instant case. We have declined to dispense with the ordinary contempt requirement "where the government, whether state or federal, asserts governmental or 'executive' privilege in cases where it is not a party," *Nat'l Super Spuds, Inc.*, 591 F.2d at 177, and we decline to dispense with it in cases where a non-party lawyer asserts either his own or his client's privileges. As other lawyers have had to do, Golan must submit to contempt before the district court's order to appear for a deposition and produce documents will be appealable. *See In re Grand Jury Proceedings*, 604 F.2d 798, 799-800 (3d Cir. 1979) (dismissing the appeal of a non-party attorney who had not submitted to contempt by defying an order to produce documents in a grand jury proceeding); *In re Murphy*, 560 F.2d 326, 332-33 & n.10 (8th Cir. 1977) (permitting appeals by non-party law firms and lawyers because they were cited for civil contempt after refusing to turn over documents to the district court)

## II.  Rule 54(b)

Golan contends further that even if he would ordinarily have to submit to contempt before he could appeal the District Court's order, the District Court's invocation of Rule 54(b) rendered the order final and immediately appealable. This argument fails, however, because Rule 54(b) does not provide district courts with the authority to make "final" an order compelling a non-party to comply with a subpoena.

Rule 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however

12

designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form or decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b). As we summarized in *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085 (2d Cir. 1992), Rule 54(b) contains three prerequisites for concluding that a decision or order is a "final judgment":

> (1) multiple *claims* or multiple *parties* must be present, (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make an "express determination that there is no just reason for delay" and expressly direct the clerk to enter judgment.

*Id.* at 1091. "Factors (1) and (2) address the issue of whether rule 54(b) applies at all to the circumstances of the case," and are reviewed *de novo*. *Id.* at 1091-92.

The circumstances of the instant case cannot satisfy factor (2). A district court may designate its order as final only if the order "meets the standard of finality governing independent litigation." *Horn v. Transcon Lines, Inc.*, 898 F.2d 589, 594 (7th Cir. 1990). For the reasons discussed above, the District Court's order directing Golan to produce documents and appear for a deposition is not final for the purposes of 28 U.S.C. § 1291.[8] Rule 54(b) did not grant the District Court authority to change the order's status regarding appealability merely by a pronouncement that the order was "final."

III. The Collateral Order Doctrine

Golan argues in the alternative that, regardless of whether the District Court's order is

---

[8] Although resistance to an order compelling compliance with a subpoena may lead directly to being held in contempt, it is the contempt order itself that represents the final step in effecting compliance with the subpoena. *See Alexander*, 201 U.S. at 121 ("In a certain sense finality can be asserted of the orders under review, so, in a certain sense, finality can be asserted of any order of a court. And such an order may coerce a witness, leaving him no alternative but to obey or be punished. It may have the effect and the same characteristic of finality as the orders under review, but from such a ruling it will not be contended there is an appeal. Let the court go farther and punish the witness for contempt of its order, then arrives a right of review, and this is adequate for his protection without unduly impeding the progress of the case.").

13

"final" for the purposes of 29 U.S.C. § 1291, we should exercise appellate jurisdiction pursuant to the collateral order doctrine, which allows us to hear an appeal from an interlocutory order "if such order (1) 'conclusively determined the disputed question'; (2) 'resolved an important question completely separate from the merits of the action'; and (3) 'was effectively unreviewable on appeal from a final judgment.'" *SEC v. TheStreet.Com*, 273 F.3d 222, 228 (2d Cir. 2001) (quoting *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999)). *See generally Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). This argument is foreclosed by our holding in *Chase Manhattan Bank, N.A., v. Turner & Newall, PLC*, 964 F.2d 159 (2d Cir. 1992), where we rejected application of the collateral order doctrine in an appeal from a discovery order that required disclosure of thousands of documents allegedly protected by attorney-client privilege, *see id.* at 160, 162-63.[9] Indeed, in that case the putative appellant was a party to the underlying civil action, *id.* at 160, and could not have appealed even from a civil contempt order, *see OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 462 F.3d 87, 89-90 (2d Cir. 2006) (civil contempt orders are not final as to parties, but are final as to non-parties). Golan, on the other hand, could have disobeyed the District Court's order, been cited for civil contempt, and then appealed from the contempt order, which is considered final for the purposes of 28 U.S.C. § 1291. In other words, the District Court's order compelling compliance with the subpoena was not "effectively unreviewable on appeal from a final judgment."

Although we ultimately exercised mandamus review to overturn the discovery order in *Chase Manhattan Bank*, Golan has not petitioned for this extraordinary writ and has neither indicated which issues addressed in the District Court's order are "of importance and of first impression" nor explained how "immediate resolution will avoid the development of discovery practices or doctrine

---

[9] We have, in circumstances not relevant here, applied the collateral order doctrine "in allowing a party to appeal an order denying discovery of a non-party where the order is made by a district court other than the one in which the underlying action is pending," *Barrick Group, Inc., v. Mosse*, 849 F.2d 70, 73 (2d Cir. 1988), but only where "effective review" is unavailable because the district courts are in two different circuits, *see id.* at 73-74.

undermining" the asserted privileges. *Chase Manhattan Bank*, 964 F.2d at 163 (explaining the prerequisites for mandamus review of a discovery order).

\* \* \*

For the foregoing reasons, and pursuant to our order of April 17, 2007, Airbus's motion to dismiss the appeal is **GRANTED**.